IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 07 C 1154 |
| v. ) ) | Magistrate Judge Gorman |
| AUTOZONE, INC. ) ) | |
| Defendant. ) | |

**MOTION IN LIMINE # 12
TO BAR CAUSATION, PROGNOSIS/PERMANENCY AND/OR
LIFE EXPECTANCY OPINIONS BY DR. MARC KATCHEN**

NOW COMES the Defendant, AUTOZONE, INC., by and through its attorneys, Joseph F. Spitzzeri and Christopher J. Carlos of JOHNSON & BELL, LTD., and hereby moves this Honorable Court for the entry of an Order, *in limine*, prohibiting DR. MARC KATCHEN from testifying or opining concerning the causation of John Shepherd's alleged sleep apnea, coitus limitations and/or depression conditions; Shepherd's prognosis for the future and/or the permanency of Shepherd's medical conditions; and/or, Shepherd's life expectancy.

### I. **Federal Rule of Evidence 702 and *Daubert***

Federal Rule of Evidence 702 defines an "expert" as a person who possesses "specialized knowledge" due to his "skill, experience, training, or education" that "will assist the trier of fact to understand the evidence or to determine a fact in issue". Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that it is the district court's role to act as a gatekeeper before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *See also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

Medical opinions based upon mere "hunches" or those that lack "scientific rigor" do not survive the *Daubert* test. *See Rosen v. Cib-Geigy Corp,* 78 F.3d 316, 319 (7th Cir. 1996) (affirming the exclusion of a doctor's opinion on the grounds that it was a mere "hunch" and "lack[ed] scientific rigor"). Medical opinions cannot be admitted when a physician intends to give opinions unsupported by any method. *Porter v. Whitehall Laboratories, Inc.,* 9 F.3d 607, 615 (7th Cir. 1993). A physician may not present opinions simply because he is an "experienced physician". *Cunningham v. Masterwear Corp.,* 569 F.3d 673, 674-75 (7th Cir. 2009). It is against this backdrop of case law that we examine the disclosed, underlying basis, for Dr. Katchen's causation opinions in this matter.

## II. Dr. Katchen's Treatment of John Shepherd

At the outset, it should be noted that the EEOC neither filed nor provided a Rule 26(a)(2) report from Dr. Katchen. AutoZone understands that Dr. Katchen never prepared a Rule 26(a)(2) report. For the reasons stated infra in Section VI of this Motion, a Rule 26(a)(2) report was required from Dr. Katchen for any causation opinions exceeding the scope of his treatment of Mr. Shepherd. *See Meyers v. National Railroad Passenger Corp.,* 619 F.3d 729, 734-35 (7th Cir. 2010).

Dr. Katchen gave his deposition in this matter on December 22, 2008. (See the transcript of the deposition of Dr. Marc Katchen attached hereto and marked as Exhibit 1). Dr. Katchen testified that he treated Mr. Shepherd on and off from January 19, 1998 to September 25, 2008. On January 19, 1998, Mr. Shepherd showed symptoms of myofascial tenderness which had not improved as expected with the previous treatments. (Exhibit 1, Page 11, lines 17 – 23 and page 12, lines 1-14). Myofascial tenderness refers to pain on pressure of pressing through the skin into the muscle tissue. (Exhibit 1, page 12, lines 15 - 18).

In June of 1998, Dr. Katchen was asked to again examine Mr. Shepherd to determine if Mr. Shepherd had reached maximum medical improvement. (Exhibit 1, page 14, lines 9 -23 and page 15, lines 1-8). Dr. Katchen authored a letter dated June, 30, 1998 noting that Mr. Shepherd had persistent soft tissue injury, the myofascial pain, which was relieved in the past with the trigger point injections, but he was unable to continue those, or therapy. (Exhibit 1, Page 15, lines 9 - 19).

Dr. Katchen next saw Mr. Shepherd on April 16, 1999. (Exhibit 1, page 15, lines 20 - 23). At that time, Mr. Shepherd had been working at AutoZone as a sales person for about a year. (Exhibit 1, page 16, lines 12 – 14). Mr. Shepherd indicated that he could sweep the floors, but had difficulty mopping and was unable to lift cases of oil. (Exhibit 1, page 16, lines 14 -16). Again, the same diagnosis, the chronic myofascial pain, seemed like now a little bit worse - no treatment for a long time. (Exhibit 1, page 16, lines 20 - 23). Dr. Katchen's conclusion after seeing Mr. Shepherd on April 16, 1998 was the same - chronic myofascial pain, now worse after activity, resulting in headaches. (Exhibit 1, page 17, lines 20 – 23 and page 18, lines 1-2).

The next time Dr. Katchen saw Mr. Shepherd was June, 28, 2002. (Exhibit 1, page 18, lines 15 – 23 and page 19, lines 1 - 6). Dr. Katchen authored a June 28, 2002 script keeping Mr. Shepherd off of work due to his myofascial pain until July 5, 2002. (Exhibit 1, page 22, lines 1 – 6). Dr. Katchen continued to place Mr. Shepherd off of work from time to time. It was Dr. Katchen's recollection that when Mr. Shepherd was off work he was being sent to therapy or some form of rehabilitation to try and get him back to work. (Exhibit 1, page 27, lines 1 - 20).

Dr. Katchen authored an April 9, 2003 AutoZone physical capability form he signed for Mr. Shepherd. Dr. Katchen noted that due to previous re-aggravating injuries caused by mopping, which appears to have created an even more serious condition, this and similar

activities as operating a floor buffer, should be avoided totally. (Exhibit 1, page 33, lines 7 - 17). As of April 9, 2003, there was also a limit of standing for 8 hours and alternate sitting and standing every 4 hours. (Exhibit 1, page 34, lines 3 - 8). Dr. Katchen placed no restriction on Mr. Shepherd's daily work hours as of April 2003. (Exhibit 1, page 35, lines 1 – 5).

On April 1, 2004, Dr. Katchen's assessment was low back pain, depression secondary to the circumstances without any further explanation as to what those circumstances were or the basis for Dr. Katchen's opinion. (Exhibit 1, page 37, lines 22 – 23 and page 38, lines 1 - 8). Dr. Katchen's July 2, 2004 notes reflect that Mr. Shepherd's depression was a little bit better on the Zoloft. (Exhibit 1, page 42, lines 2 - 3).

Despite the EEOC's direct question during his deposition, Dr. Katchen never gave a specific opinion causally relating Mr. Shepherd's depression to his loss of employment from Autozone. (Exhibit 1, page 59, lines 6 – 19). The best Dr. Katchen could offer was: "I think hopefully most people are better off when they have a job and they are able to provide for their family. So I would think, yeah, if he could, that would certainly help him. It'd be one step in the right direction." (Exhibit 1, page 60, lines 11 – 19). Dr. Katchen opined that he "thought" Shepherd's re-employment would improve Mr. Shepherd's depression. (Exhibit 1, page 60, lines 20 -23 and page 61, lines 1 – 2). Dr. Katchen did not offer any further basis for his "hunch" and his opinion certainly lacks "scientific rigor".

On June 12, 2006, Dr. Katchen's assessment was major depression, did well on the Zoloft, myofascial pain, increased marital stress; also complained of having coitus affected by his neck and back pain. (Exhibit 1, page 45, lines 2 – 10). Dr. Katchen's notes offered no further comment regarding the coitus limitations. In response to EEOC questioning, Dr. Katchen offered the general opinion that in his experience movement interferes with coitus in both pain

patients and patients with movement limitations. (Exhibit 1, page 61, lines 3 – 17). There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor".

On March 13, 2007, Mr. Shepherd complained of having sleep apnea spells for the last 6 months. (Exhibit 1, page 46). Dr. Katchen could not identify the specific cause of Mr. Shepherd's sleep apnea, noting that sleep apnea causes are different for different people. (Exhibit 1, pg 47, lines 20-23 and pgs 48 – 49, line 1). Dr. Katchen was unable to state the specific cause in Mr. Shepherd's case as there wasn't a specific test to see the etiology. (Exhibit 1, page 48, lines 8-11). The best Dr. Katchen could do was to state that Mr. Shepherd's inactivity could lead to sleep apnea, "maybe". (Exhibit 1, page 48, lines 12-19). At the time of his deposition testimony, Dr. Katchen could not render an opinion whether Mr. Shepherd's sleep apnea was caused by inactivity. (Exhibit 1, page 48, lines 20 – 23 and page 49, line 1). Dr. Katchen's notes make no further reference to the sleep apnea. There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor".

At his last visit of September 28, 2008, Dr. Katchen's assessment was the same; chronic myofascial pain, depression, marital stress and hypertension. (Exhibit 1, page 50, lines 22 – 23 and page 51, lines 1 - 8). There was no further appointment scheduled with Dr. Katchen as of September 28, 2008. (Exhibit 1, page 51, lines 8 – 14).

### III. Dr. Katchen Is Not Qualified To Offer Opinion Testimony As To John Shepherd's Alleged Depression, Inability To Reproduce or Sleep Apnea

AutoZone moves to bar Dr. Marc Katchen from offering any testimony or opinions relative to John Shepherd's depression, inability to reproduce or sleep apnea as his testimony fails to meet the criteria for relevance and reliability required by Fed. R. Evid. 702 and Fed. R. Evid. 104(a), and embraced by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579; 113 S. Ct. 2786 (1993).

The trial court must act as a gatekeeper, screening purported scientific evidence to ensure reliability. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *M. Graham, Federal Practice and Procedure: Evidence § 6652 (interim edition)(1995 Supp.)* The purpose of the gatekeeper function of the court is to protect juries from the effect of "powerful and quite misleading" expert testimony which may be offered without basis. *Daubert*, 509 U.S. at 595. The party who proffers an expert's testimony bears the burden of establishing its admissibility by a preponderance of proof. *Schmaltz v. Norfolk and Western Ry. Co.*, 878 F. Supp. 1119; 42 Fed. R. Evid. Serv. 77 (N.D.Ill. 1995).

The *Daubert* court identified four nonexclusive guideposts for determining whether expert testimony can be characterized as a scientific opinion: (1) whether the theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known potential rate of error; and (4) the general acceptance of the theory in the scientific community. *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 642 (7th Cir. 1995); *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 344 (7th Cir. 1994); *Daubert*, 509 U.S. at 591-95, 113 S.Ct. at 2796-97. The most important of these four factors is whether the proffered

testimony has been tested. *Stanczyk v. Black & Decker, Inc.*, 836 F.Supp. 565, 567 (N.D.Ill. 1993). "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified." *Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796.

In discussing scientific knowledge, the Court in *Daubert* explained:

> The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. . . Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguable, there are no certainties in science. . . but, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation –i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert*, 509 U.S. at 590

Lastly, scientific evidence which is only set forth for purposes of litigation, as in the instant case, should be scrutinized at a higher level. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Dr. Katchen is a neurologist. A neurologist is a physician who deals with the nervous system. He was board certified in neurology in 1989. (See Exhibit 1, and Dr. Katchen's curriculum vitae attached as Exhibit 1 thereto). He practiced neurology from 1982 – present. He has no specialized training in reproductive sciences. Based on the above information alone, Dr. Katchen is not qualified to render opinion testimony regarding John Shepherd's alleged inability to reproduce. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1239 (7th Cir. 1993) (holding that the opinion testimony of a pathologist was properly excluded because a "pathologist", which is to say an expert on postmortems" is not an expert on the effects of electroshock treatments on the human body and psyche). Further, there is no evidence that Dr. Katchen is qualified to render opinions regarding depression or sleep apnea.

Additionally, as of the date of this motion, Dr. Katchen has offered no scientific evidence supporting opinions regarding the causation of John Shepherd's alleged depression, inability to reproduce or sleep apnea. During his deposition, Dr. Katchen never gave a specific opinion causally relating Mr. Shepherd's depression to his loss of employment from Autozone. (Exhibit 1, page 59, lines 6 – 19). The best Dr. Katchen could offer was: "I think hopefully most people are better off when they have a job and they are able to provide for their family. So I would think, yeah, if he could, that would certainly help him. It'd be one step in the right direction." (Exhibit 1, page 60, lines 11 – 19). Dr. Katchen opined that he "thought" Shepherd's re-employment would improve Mr. Shepherd's depression. (Exhibit 1, page 60, lines20 -23 and page 61, lines 1 – 2). Dr. Katchen did not offer any further basis for his "hunch" and his opinion certainly lacks "scientific rigor".

During his deposition, Dr. Katchen offered the general opinion that in his experience movement interferes with coitus in both pain patients and patients with movement limitations. (Exhibit 1, page 61, lines 3 – 17). There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor". Dr. Katchen mentions nothing about Shepherd's ability to reproduce. In fact, he doesn't even say that Shepherd can't engage in intercourse. He merely says it can be painful. Dr. Katchen did no testing of Shepherd's ability to reproduce. Thus, he has no scientific foundation supporting any theories relating to Shepherd's alleged inability to reproduce. Finally, during his deposition, Dr. Katchen could not identify the specific cause of Mr. Shepherd's sleep apnea, noting that sleep apnea causes are different for different people. (Exhibit 1, pg 47, lines 20-23 and pgs 48 – 49, line 1). Dr. Katchen was unable to state the specific cause in Mr. Shepherd's case as there wasn't a specific test to see the etiology. (Exhibit 1, page 48, lines 8-11). The best Dr. Katchen

could do was to state that Mr. Shepherd's inactivity could lead to sleep apnea, "maybe". (Exhibit 1, page 48, lines 12-19). At the time of his deposition testimony, Dr. Katchen could not render an opinion whether Mr. Shepherd's sleep apnea was caused by inactivity. (Exhibit 1, page 48, lines 20 – 23 and page 49, line 1). Dr. Katchen's notes make no further reference to the sleep apnea. There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor".

Dr. Katchen's "opinions" regarding Mr. Shepherd's coitus issues, depression and sleep apnea is nothing more than "hunches" lacking "scientific rigor" and are not admissible. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (affirming the exclusion of a doctor's opinion on the grounds that it was a mere "hunch" and "lack[ed] scientific rigor"). Medical opinions cannot be admitted when a physician intends to give opinions unsupported by any method. *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 615 (7th Cir. 1993). A physician may not present opinions simply because he is an "experienced physician". *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 674-75 (7th Cir. 2009). Admission of Dr. Katchen's above noted opinions would violate each of the above cited cases.

## IV. Dr. Katchen Cannot Provide Prognosis or Permanency Opinions

It has been noted that to form a proper bases for recovery from permanent injuries, it is necessary that the consequences relied on must be reasonably certain to result from the original injury. *Shelton v. Thomson*, 148 F.2d 1, 4 (7th Cir. 1945), *citing Lauth v. Chicago Union Traction Co.*, 244 Ill. 244, 251, 91 N.E. 431, 434 (1910). During his deposition, Dr. Katchen provided no opinion regarding the permanency of Mr. Shepherd's alleged conditions nor did he opine that they were reasonably certain to result from the September 2003 incident. He cannot

be allowed to do so now. Any such opinions would violate Rule 702 of the Federal Rules of Evidence, *Daubert* and the cases cited in Section IV above. Prognosis and permanency opinions would also violate the report requirement of Rule 26(a)(2) noted in Section VI below.

Furthermore, a treating physician may not testify at trial regarding his present opinions of a patient's permanency or prognosis unless the opinion is based upon a recent examination. *Marchese v. Vincelette,* 261 Ill.App.3d 520, 633 N.E.2d 877, 880 (1st Dist. 1994). A present opinion based upon an examination a number of years prior to trial cannot represent an opinion at the time of trial. *Henricks v. Nyberg, Inc.,* 41 Ill.App.3d 25, 353 N.E.2d 273 (1st Dist. 1976) (Because expert testimony must be founded upon facts and not conjecture, an opinion at trial based upon an exam performed three years prior would be unreliable). See also *Knight v. Lord,* 271 Ill.App.3d 581, 648 N.E.2d 617, 620 (4th Dist. 1995) (Twenty-eight month gap between examination and trial renders the opinion unreliable an inadmissible). Dr. Katchen last saw Mr. Shepherd on September 28, 2008 and no further appointment was scheduled with Dr. Katchen at that time. (Exhibit 1, page 50, lines 22 – 23 and page 51, lines 1 - 14). Dr. Katchen cannot render a present opinion based upon an examination over 2.5 years prior to trial as it does not represent an opinion at the time of trial and is therefore unreliable.

## V. Dr. Katchen Should Be Barred From Giving Opinions For Failing to Provide a Rule 26(a)(2) Report

In *Meyers v. National Railroad Passenger Corporation,* 619 F.3d 729 (7th Cir. 2010), the 7th Circuit held that:

> A treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2). *Meyers,* 619 F.3d at 734-35.

Meyers was a pipefitter responsible for a variety of repair work on railroad cars which at times required heavy lifting, carrying, reaching, pulling, twisting, and other repetitive motions. He was diagnosed with spondylosis in the cervical spine, spinal stenosis, mild disc protrusion, and degenerative joint disease in the left shoulder. He was also diagnosed with carpal tunnel syndrome, bilateral shoulder rotator cuff tendinitis, low back pain, and degenerative joint disease in the knees. Meyers claimed he had been exposed to excessive and harmful cumulative trauma since he began working for Amtrak and filed a FELA action against Amtrak. Meyers offered expert testimony in the form of reports prepared by his treating physicians. The reports of the treating physicians failed to set forth the support for their conclusions and made no mention of any underlying methodology used to reach their opinions.

At the close of discovery, Amtrak moved to strike the reports, affidavits and opinions of the treating physicians pursuant to Rule 702 of the Federal Rules of Evidence, *Daubert*, and for failing to comply with the requirements for expert reports set forth in Rule 26(a)(2) of the Federal Rules of Civil Procedure. The District Court granted Amtrak's motion pursuant to Rule 702, *Daubert*, and for failing to meet the requirements of Rule 26(a)(2). The District Court noted the reports were merely "conclusory" and they did not provide sufficient information as to how and why such conclusions were reached.

The 7th Circuit agreed with the District Court's analysis and rulings. Noting its comments in *Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004), that "some district courts have suggested that if the Rule 26(a)(2) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary", *Musser*, 356 F.3d at 758, n.3, the 7th Circuit concluded that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination

in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case" and thus is required to submit an expert report in accordance with Rule 26(a)(2).

As noted above, there is no evidence suggesting that Dr. Katchen previously considered or determined the cause of Mr. Shepherd's alleged coitus limitations, depression or sleep apnea injuries during the course of treatment. As a result, Dr. Katchen was required to provide an expert report in accordance with Rule 26(a)(2). Said report is required to include the "basis and reasons" for his conclusions. Unlike *Meyers* where reports were in fact provided but failed to meet the requirements of Rule 26(a)(2), here Dr. Katchen failed to provide a report whatsoever and his records noted above are remarkably sparse making it impossible to tell what he was thinking about Mr. Shepherd's injuries prior to testifying at his deposition. In fact, Dr. Katchen's deposition testimony fails to comply with the strict requirements of Rule 26(a)(2) for opinion disclosure.

For these reasons, this court should exclude Dr. Katchen's opinions concerning the causation of Mr. Shepherd's depression, coitus limitation or sleep apnea because there is no Rule 26(a)(2) report from Dr. Katchen and his records and deposition testimony fail to provide any underlying methodology in an effort to demonstrate causation. *See Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 825-26 (7th Cir. 2010). It is the party proffering expert testimony that bears the burden of compliance with Rule 26(a)(2) and the consequence of non-compliance is "exclusion of an expert's testimony .... *Gicla v. United States, 572 F.3d 407, 410 (7th Cir. 2009).*

### VI. Plaintiff Should Be Barred From Introducing A Life Expectancy Table To Support Damages As They Are Not Providing An Expert With The Medical Background Necessary To Testify In That Area

To the extent that the EEOC intends on introducing a life expectancy table from which they will extrapolate how long into the future John Shepherd will suffer pain or limitations, such evidence would need to be established by expert opinion testimony. In this matter, the need for expert medical testimony is all the more compelling as it is not at all clear how Mr. Shepherd's alleged neurological and other disorders may otherwise diminish his life expectancy. Such information would certainly not be as self-evident or apparent as to obviate the need for expert testimony.

The Seventh Circuit has held that expert testimony is required to lay a foundation for how certain factors will impact a Plaintiff's life expectancy. *See Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir. 1994)(Refusing to allow admission of evidence that substance abuse would diminish life expectancy absent proper expert testimony), *citing Meller v. Heil Co.*, 745 F.2d 1297, 1303 (10th Cir. 1984); *see also Envoy v. CRST Van Expedited, Inc.*, 430 F.Supp.2d 775, 781-782 (N.D. Ill. 2006)(Life expectancy testimony requires medical expertise, thus an economist was properly barred from testifying to such matters pursuant to Rule 702 and *Daubert*). Dr. Katchen offered no such life expectancy testimony during his deposition and he failed to provide a Rule 26(a)(2) report containing such opinions as noted above. For those reasons, the EEOC should be prohibited from providing life expectancy opinions in the trial of this matter.

WHEREFORE, Defendant, AutoZone, Inc., respectfully requests this Court for the entry of an Order, *in limine*, prohibiting DR. MARC KATCHEN from offering any opinions or testimony regarding the alleged causation of JOHN SHEPHERD'S depression, coitus limitations and/or sleep apnea; Shepherd's prognosis for the future and/or the permanency of Shepherd's medical conditions; and Shepherd's life expectancy.

By: /s/ Joseph F. Spitzzeri
Attorneys for AutoZone, Inc.

Joseph F. Spitzzeri
Christopher J. Carlos
JOHNSON & BELL, LTD.
33 W. Monroe Street, #2700
Chicago, Illinois 60603
312/372-0770