IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07 C 1154 |
| v. | ) ) | Magistrate Judge Gorman |
| AUTOZONE, INC. | ) ) ) | |
| Defendant. | ) ) | |

## MOTION IN LIMINE #13

### MOTION TO BAR REFERENCE TO ANY AND ALL PRIOR AND PENDING LAWSUITS AND CLAIMS AND OCCURRENCES OF ANY KIND

NOW COMES Defendant, AUTOZONE, INC, by and through its attorneys, Joseph F. Spitzeri and Christopher J. Carlos of JOHNSON & BELL, LTD., and moves this Honorable Court *in limine* for the entry of an order prohibiting the plaintiff, plaintiff's counsel, as well as all witnesses and parties to this lawsuit from making any statements, remarks or arguments, or introducing any testimony, exhibits or other evidence, relating or pertaining to any other prior and pending lawsuits, claims and/or occurrences of any kind involving AutoZone. In support thereof defendant states as follows:

Defendant moves to bar evidence of any and all lawsuits and claims of any kind involving AutoZone, as they are irrelevant and unfairly prejudicial. FED. R. EVID. 401 AND 403. Further, any arguable probative value would be substantially outweighed by its prejudicial effect. "Evidence is unfairly prejudicial if it will 'induce the jury to decide the case on an improper basis rather than on the evidence presented.'" *United States v. Miles*, 207 F.3d 988, 992 (7th Cir. 2000). As this Court has previously stated, evidence about unrelated lawsuits is inflammatory and likely to prejudice

the jury against defendants. *Johnson v. PS Ill. Trust*, No. 03 C 6517, 2005 U.S. Dist. LEXIS 28069 (N. D. Ill. November 14, 2005). In *Johnson*, the Northern District Court granted defendant's motion to exclude reference to other lawsuits brought against PSI or its affiliates reasoning that facts involving other lawsuits are too far afield, irrelevant, and unduly prejudicial. *Id.* at 14. As in *Johnson*, evidence of any and all lawsuits and claims of any kind should be barred as they are irrelevant and unduly prejudicial to AutoZone in the instant matter.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403. Here, the risks posed by the introduction of the evidence significantly outweigh its probative worth. Accordingly, evidence of any and all lawsuits, claims and occurrences of any kind involving AutoZone should be barred.

WHEREFORE, Defendant, AUTOZONE, INC, requests this Honorable Court enter an order, in limine, prohibiting the plaintiff, its respective counsel, as well as all witnesses and parties to this lawsuit from making any statements, remarks or arguments, or introducing any testimony, exhibits or other evidence, relating or pertaining to any other prior and pending lawsuits, claims and/or occurrences of any kind involving AutoZone. Respectfully submitted,

By:   /s/ Joseph F. Spitzzeri
     Joseph F. Spitzzeri
     Attorneys for Autozone, Inc.

Joseph F. Spitzzeri
Christopher J. Carlos
JOHNSON & BELL, LTD.
33 W. Monroe Street, #2700
Chicago, Illinois 60603
312/372-0770

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 28069    Page 1 of 7

Switch Client | Preferences | Help | Sign Out

| Search | Get a Document | Shepard's® | More | | History | Alerts |

FOCUS™ Terms [          ]  Search Within  Original Results (1 - 1)  •  View Tutorial
Advanced...

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 28069**

*2005 U.S. Dist. LEXIS 28069, ** 

⬇ View Available Briefs and Other Documents Related to this Case

JONYSE JOHNSON, Plaintiff, v. PS ILLINOIS TRUST, Defendant.

No. 03 C 6517

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2005 U.S. Dist. LEXIS 28069

November 14, 2005, Decided
November 14, 2005, Filed

**SUBSEQUENT HISTORY:** Motion denied by Johnson v. PS Ill. Trust, 2006 U.S. Dist. LEXIS 21011 (N.D. Ill., Apr. 19, 2006)

**PRIOR HISTORY:** Johnson v. PS Ill. Trust, 2005 U.S. Dist. LEXIS 26033 (N.D. Ill., Oct. 26, 2005)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff customer filed an action against defendant storage facility, which alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq. The facility filed a motion in limine.

**OVERVIEW:** The cause of action arose out of damages incurred by the customer when she stored her belongings at the facility. She filed an action under the Act, and the facility filed a motion in limine. In partially granting that motion, the court refused to exclude evidence of emotional distress and related damages. Just because summary judgment was granted on an intentional infliction of emotional distress (IIED) claim did not mean that the customer was barred from any recovery for emotional distress under 815 Ill. Comp. Stat. 505/10a. However, evidence of damages over $5,000 was properly excluded because the parties' contract prohibited the recovery of damages over this amount. The agreement also stated that the storage of items having sentimental value was not allowed. The agreement was not in violation of public policy. Next, the court held that the customer was not required to show outrageous conduct in order to recover punitive damages. The showing for an IIED claim was not the same as the showing required for punitive damages. Finally, the customer was precluded from referencing other cases, and non-party fact witnesses were excluded when they were not testifying.

**OUTCOME:** The court granted the motion to exclude evidence of damages in excess of $5,000, damages for sentimental and irreplaceable items, reference to other lawsuits, and

allowed the exclusion of certain witnesses. The rest of the motion was denied.

**CORE TERMS:** emotional distress, punitive damages, lawsuit, exclude evidence, exculpatory, self-storage, Fraud Act PSI, summary judgment, outrageous conduct, sentimental, consumer, severe, irreplaceable, storage, trier of fact, public policy, outrageous, limine, forfeiture, testifying, non-party, recover damages, warehouseman, prior ruling, storage area, affiliates, stored, evidence to support, introducing evidence, public service

**LEXISNEXIS® HEADNOTES**                                           ⊟ **Hide**

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements

*HN1* The Supreme Court of Illinois has recognized the intentional causing of severe emotional distress (IIED) as a separate and additional tort. For an IIED claim under Illinois law, a plaintiff must establish that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress. There are not synonymous requirements such as a showing of severe emotional distress and outrageous conduct for damages under 815 Ill. Comp. Stat. 505/10a. The Supreme Court of Illinois has instructed that in order to recover damages under 815 Ill. Comp. Stat. 505/10a, a plaintiff must show that her injury is a direct and proximate result of an alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq. More Like This Headnote

Contracts Law > Contract Conditions & Provisions > Exculpatory Clauses

Contracts Law > Defenses > Public Policy Violations

*HN2* The general rule is to enforce exculpatory agreements unless (1) it would be against settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement. The types of exculpatory agreements that would be contrary to public policy include those (1) between an employer and employee; (2) between the public and those charged with a duty of public service, such as involving a common carrier, an innkeeper, a public warehouseman or a public utility; and (3) between parties where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff, such as a monopoly or involving a plaintiff without a reasonable alternative. More Like This Headnote

Contracts Law > Defenses > Public Policy Violations

*HN3* Public policy supports requiring a party to a contract to honor the terms of the contract. More Like This Headnote

Contracts Law > Contract Interpretation > General Overview

*HN4* Under Illinois law, the rights of parties to a contract are limited by the terms expressed in the contract and a court will not rewrite a contract to suit one of the parties, but will enforce the terms as written. More Like This Headnote

Torts > Damages > Punitive Damages > Conduct Supporting Awards

Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Remedies

*HN5* There has been no statement by Illinois courts that the outrageous conduct necessary to support an intentional infliction of emotional distress claim is precisely the same conduct required for an award of punitive damages. It has long been established in Illinois that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. More Like This Headnote

**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)

**COUNSEL: [*1]** For Jonyse Johnson, Plaintiff: Christopher V. Langone, Craig Rein Frisch, DaToya Jacques Burtin, Langone Law Firm, Chicago, IL; Jeffrey Naffziger, Sudekum, Cassidy & Shulruff, Chtd., Chicago, IL; Mark T. Lavery, Law Offices of Mark T. Lavery, Chicago, IL.

For PS Illinois Trust, Defendant: David H. Schroeder, Jason M Stevens, Charysh & Schroeder, Ltd., Chicago, IL; David Luther Hartsell, Edward W. Schwartz, Richard T. Greenberg, McGuireWoods LLP, Chicago, IL; Donald Christopher Pasulka, McGuireWoods Ross & Hardies, Chicago, IL.

**JUDGES:** SAMUEL DER-YEGHIAYAN, District Judge.

**OPINION BY:** Samuel Der-Yeghiayan

**OPINION**

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant PS Illinois Trust's ("PSI") motions in limine. For the reasons stated below, we grant in part and deny in part the motions in limine.

**DISCUSSION**

I. Motion to Exclude Evidence of Emotional Distress and Related Damages

PSI requests that the court bar evidence of Johnson's emotional distress or damages arising from her emotional distress. PSI argues that any evidence of Johnson's emotional distress is irrelevant. In a prior ruling in this action, we granted **[*2]** summary judgment in favor of PSI on Johnson's intentional infliction of emotional distress ("IIED") claim. PSI argues that we have "ruled that there are no facts under which [Johnson] can recover damages for emotional distress allegedly caused by [PSI's] conduct." (Reply Mot. In Lim. No. 3, 1). We made no such ruling and merely held that Johnson had not pointed to sufficient evidence to support the elements of her IIED claim.

Johnson may not be able to recover damages for emotional distress under 815 ILCS 505/10a(a) and (c) of the Illinois Consumer Fraud and Deceptive Business Practices Act, Act, 815 ILCS 505/1 *et seq.* ("Fraud Act") ("Section 505/10a"). 815 ILCS 505/10a(a) and (c); *Fogle v. William Chevrolet/GEO, Inc.,* 2000 U.S. Dist. LEXIS 11556, 2000 WL 1129983, at *6 (N.D.Ill. 2000)

(stating that a "plaintiff can recover for intangible actual damages resulting from mental suffering, such as aggravation"). PSI argues that Johnson is barred from such a recovery because of the court's ruling on the IIED claim. **HN1** The Supreme Court of Illinois has recognized "the intentional causing of severe emotional [*3] distress as a separate and additional tort. . . ." *Public Finance Corp. v. Davis,* 66 Ill. 2d 85, 360 N.E.2d 765, 766-67, 4 Ill. Dec. 652 (Ill. 1976). For an IIED claim under Illinois law, a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Dunn v. City of Elgin, Illinois,* 347 F.3d 641, 651 (7th Cir.2003) (quoting *Doe v. Calumet City,* 161 Ill. 2d 374, 641 N.E.2d 498, 506, 204 Ill. Dec. 274 (1994)). There are not synonymous requirements such as a showing of severe emotional distress and outrageous conduct for damages under Section 505/10a. The Supreme Court of Illinois has instructed that in order to recover damages under Section 505/10a, a plaintiff must show that her "injury is a direct and proximate result of an alleged violation of the Act." *Martin v. Heinold Commodities, Inc.,* 163 Ill. 2d 33, 643 N.E.2d 734, 751, 205 Ill. Dec. 443 (Ill. 1994). Therefore, simply because the court granted summary judgment in favor of PSI [*4] on Johnson's IIED claim does not mean that Johnson is barred from any recovery for emotional distress under the Fraud Act.

PSI also argues that Johnson will not be able to point to evidence of emotional distress at trial. PSI quotes *Fogle v. William Chevrolet/GEO, Inc.* in its reply, a case in which the court commented on the evidence of emotional distress and stated that: "plaintiffs have not presented a shred of evidence to establish a genuine issue of material fact on damages such that a trial is required." 2000 U.S. Dist. LEXIS 11556, 2000 WL 1129983, at *6 (N.D.Ill. 2000). PSI argues that Johnson likewise has failed to point to sufficient evidence of emotional distress, arguing that if the facts in this case "were insufficient to support a claim for intentional infliction of emotional distress, . . . they are equally inadequate to support a claim for emotional distress damages under the" Fraud Act. (Mot. In Lim. No. 3, 3). However, PSI could have moved for such a finding as a matter of law in its motion for summary judgment. PSI chose not to do so and cannot now seek such a ruling in a motion in limine. Such factual inquires are for the trier of fact at this juncture. Therefore, we deny PSI's [*5] motion to exclude evidence of Johnson's emotional distress.

II. Motion to Exclude Evidence of Damages in Excess of $ 5.000

PSI requests that the court bar Plaintiff Jonyse Johnson ("Johnson") from introducing evidence of damages for the loss of irreplaceable items of personal and sentimental value, or evidence of losses in excess of $ 5,000. PSI argues that Johnson cannot recover in excess of $ 5,000 because the storage agreement signed by Johnson ("Agreement") provides that PSI's "total responsibility for any Loss from any cause whatsoever will not exceed a total of $ 5,000." (Ag. Par. 5). Johnson placed her initials on the Agreement next to the above paragraphs beside a caption that states: "Occupant acknowledges that he understands and agrees to the provisions of this paragraph." (Ag. Par. 5). The Agreement also provided that Johnson acknowledges that "under no circumstances with the aggregate value of all personal property stored in the Premises exceed, or be deemed to exceed $ 5,000, and may be worth substantially less than $ 5,000" and that the "Premises and Property are not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property such [*6] as (but not limited to) books, records, writings, works of art, objects for which no immediate resale market value exists, objects which are claimed to have special or emotional value to Occupant and records or receipts relating to the stored goods." (Ag. Par. 3). Johnson placed her initials on the Agreement next to the above paragraphs beside a caption that states: "Occupant acknowledges that he has read and understands the provisions of this paragraph and agrees to comply with its requirements." (Ag. Par. 3). Johnson also placed her signature at the bottom of the Agreement.

Johnson expressly acknowledged by her initials and signatures that she understood the above provisions of the Agreement. The Agreement language is not confusing, overly complex, or filled with legal jargon. The Agreement specifically instructed Johnson under the heading "Use of

Premises and Property and Compliance with Law" that the storage area was not an appropriate area to store items that are irreplaceable or have sentimental value. (Ag. Par. 3). The Agreement also explained that Johnson was agreeing, by entering into the Agreement, that PSI's "total responsibility for any Loss from *any cause whatsoever* [*7] will not exceed a total of $ 5,000." (Ag. Par. 5)(emphasis added).

Johnson requests that the court find that the above provisions of the Agreement are unenforceable since they are contrary to Illinois public policy. Johnson cites *White v. Village of Homewood,* 256 Ill. App. 3d 354, 628 N.E.2d 616, 619-20, 195 Ill. Dec. 152 (Ill. App. Ct. 1993), which provides that HN2"the general rule is to enforce exculpatory agreements unless (1) it would be against settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." *Id.* The court in *White* also explained that the types of exculpatory agreements that would be contrary to public policy include "those (1) between an employer and employee; (2) between the public and those charged with a duty of public service, such as involving a common carrier, an innkeeper, a public warehouseman or a public utility; and (3) between parties where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff, such as a monopoly or involving a plaintiff without a reasonable alternative." *Id.*

Johnson first argues that [*8] the Agreement provisions mentioned above results in a forfeiture and Johnson refers to the court's prior ruling where the court stated that the sale of Johnson's property would, if proven, constitute a forefeiture which is disfavored by the law. However, in our prior ruling we merely indicated that the sale of Johnson's property without giving her an opportunity to pay her past due rent would constitute a forfeiture. (8/17/05 OP 18). The court never made any finding regarding whether the above provisions of the Agreement constitute a forfeiture. Clearly, the fact that under the above provisions of the Agreement Johnson is able to recover $ 5,000 shows that the provisions would not result in a forfeiture of Johnson's property without compensation. Johnson may argue that her invaluable possessions were worth much more to her than $ 5,000, but the Agreement also clearly provided that she should not have stored such items in the storage area.

Johnson argues that the above provisions of the Agreement enable PSI to improperly insulate itself from liability. There is nothing unlawful about PSI choosing to protect itself financially. There is no evidence that PSI did so in an underhanded [*9] fashion. The Agreement clearly informs Johnson regarding the amount of liability that PSI would incur if something happened to her property. Johnson was put on notice that, at most, she could recover $ 5,000 if her items in the storage area were lost for any reason.

Johnson acknowledges that PSI is technically not a warehouseman, but argues that PSI performs a "public service analogous to that of a public warehouseman." (Ans. Mot. In Lim. No. 1, 3). However, Johnson provides no legal support for such an extension of the law. Neither is her analogy accurate. PSI is engaged in the business of offering small-scale self-storage facilities to consumers. If such small-scale storage facilities deem it necessary to provide such exculpatory clauses for business reasons, they can legally do so. PSI gave fair warning to Johnson that its facility was for storing items that were not of sentimental value or irreplaceable and for the storage of no more than $ 5,000 in goods or Johnson would do so at her own risk. Johnson argues that "in today's economy, self storage is an important consumer service." (Ans. Mot. In Lim. No. 1, 3). If that is true, the service may not be available to consumers if [*10] self-storage facilities such as PSI cannot limit, with fair warning to the consumers, their potential liability.

Finally, Johnson argues that there is a disparity of bargaining power between her and PSI. Johnson acknowledges that PSI does not have a monopoly over self-storage services and that there are other self-storage facilities that she could have chosen to go to instead of PSI. However, Johnson theorizes that "other similar facilities also impose the same or similar contractual limitations and exculpatory provisions in their rental agreements." (Ans. Mot. In Lim. No. 1, 4). First, Johnson's argument is deficient because she provides no support for her conclusions regarding other self-storage facilities. Second, even if other facilities impose such

restrictions, there is no evidence of a conspiracy by the facilities to unjustifiably impose such exculpatory provisions. It may be, as is indicated above, that the exculpatory clauses are necessary to make the facilities financially stable. In any case, Johnson has failed to provide any support for her speculation regarding other self-storage facilities.

Johnson now turns away from the terms of her agreement and attempts to have **[*11]** the court render unenforceable the above provisions of the Agreement as a matter of public policy. **HN3**Public policy supports requiring a party to a contract to honor the terms of the contract. There is no evidence, for example, that Johnson was coerced into signing the Agreement. **HN4** Under Illinois law, "the rights of parties to a contract are limited by the terms expressed in the contract . . . [and a] court will not rewrite a contract to suit one of the parties, but will enforce the terms as written." *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 641 N.E.2d 957, 962, 204 Ill. Dec. 527 (Ill. App.Ct. 1994). Johnson is bound by the Agreement that she entered into and the court will not rewrite the Agreement to allow her to avoid the terms of the Agreement. If the court were to do so at this point, the contract entered into by Johnson and PSI would have little legal significance. Therefore, we grant PSI's motion in limine to bar Johnson from introducing evidence of damages for the loss of irreplacable items of personal and sentimental value, or for losses in excess of $ 5,000.

III. Motion to Exclude Evidence of Punitive Damages

PSI requests that the court bar Johnson from seeking punitive damages **[*12]** for a violation of the Fraud Act. PSI argues that, in order to award punitive damages for a Fraud Act claim, the plaintiff must show outrageous conduct. PSI argues that Johnson "has not developed, and would be unable to develop at trial any evidence demonstrating that [PSI's] conduct was 'outrageous' for the purposes of obtaining the extraordinary remedy of punitive damages." (D In Lim. No.2, 2). However, what Johnson will or will not be able to show at trial cannot be decided at this juncture. Such an issue could have been addressed by PSI in a motion for summary judgment, but at this point the issue must be left to the trier of fact to address. The trier of fact is capable of reviewing the evidence and determining whether the conduct of PSI warrants an award of punitive damages. PSI also argues that the trier of fact cannot find conduct sufficient evidence to support an award of punitive damages because the court granted summary judgment on behalf of PSI on the IIED claim. Again, as with the motion regarding damages for emotional distress, PSI is comparing apples and oranges. **HN5**There has been no statement by Illinois courts that the outrageous conduct necessary to support an IIED **[*13]** claim is precisely the same conduct required for an award of punitive damages. PSI quotes the Supreme Court of Illinois in *Loitz v. Remington Arms Co., Inc.*, 138 Ill. 2d 404, 563 N.E.2d 397, 150 Ill. Dec. 510 (Ill. 1990) for the proposition that a plaintiff must show outrageous conduct to recover punitive damages. (Mot. In Lim. No. 2, 2). However, a close look at the court's reference in *Loitz* to the term "outrageous" reveals that the court was merely quoting the Restatement (Second) of Torts as supplemental support in its opinion. *Id.* at 402. The court in *Loitz* did specifically state that "it has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Id.* (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353, 359, 23 Ill. Dec. 559 (Ill. 1978)). Those requirements for the recovery of punitive damages do not even include the term outrageous and, thus, PSI is incorrect in its assertion that the outrageous conduct required to support an TIED **[*14]** claim is the same conduct required for the recovery of punitive damages under Illinois law. Therefore, we deny PSI's motion to bar Johnson from seeking punitive damages for a violation of the Fraud Act.

IV. Motion to Exclude References to Other Cases

PSI moves to bar any reference to other lawsuits that have been brought against PSI or its affiliates. PSI argues that such matters are irrelevant and prejudicial. Johnson responds by agreeing to refrain from purposefully referring to the lawsuits in order to confuse or prejudice the jury. Johnson indicates, however, that she objects to a broad bar regarding such a topic

because it might "impede [her] ability to pursue legitimate cross-examination" of Timothy Hatch ("Hatch"), a former PSI District Manager, who may be called to testify by PSI. Johnson claims that Hatch is involved in at least one other lawsuit with facts similar to the instant action. Johnson states that she intends to at least question Hatch on cross examination about the other case. Johnson may desire to do so, but has not provided any valid basis to explain why such testimony would be relevant. Whether or not PSI is involved in other actions with different **[*15]** plaintiffs and different facts has no bearing on the facts at issue in the instant action. Also, PSI is moving to bar any reference to other lawsuits and thus presumably will not be raising the topic on direct with Hatch. Thus, Johnson will not be able to touch on the lawsuits within the scope of cross examination. We also agree with PSI that facts involving other lawsuits in which Johnson has no involvement are too far afield, irrelevant, and unduly prejudicial to PSI. Therefore, we grant PSI's motion to bar reference to other lawsuits that have been brought against PSI or its affiliates.

V. Motion to Exclude Non-Party Fact Witnesses When Not Testifying

PSI requests that the court exclude non-party fact witnesses when not testifying. Johnson has not filed any response to the motion, thus indicating that she has no objection. The request is appropriate and we grant PSI's motion to exclude non-party fact witnesses from the courtroom when they are not testifying.

**CONCLUSION**

Based on the foregoing analysis, we deny PSI's motion to exclude evidence of emotional distress and deny PSI's motion to bar Johnson from seeking punitive damages. We grant PSI's motion to exclude **[*16]** evidence of damages in excess of $ 5,000 and damages for sentimental and irreplaceable items, grant PSI's motion to bar any reference to other lawsuits that have been brought against PSI or its affiliates, and grant PSI's motion to exclude non-party fact witnesses when they are not testifying.

Samuel Der-Yeghiayan

United States District Court Judge

Dated: November 14, 2005

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 28069**
View: Full
Date/Time: Friday, April 15, 2011 - 3:57 PM EDT

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- Q - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ♦ - Positive treatment is indicated
- A - Citing Refs. With Analysis Available
- i - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In   About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.