IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07 C 1154 |
| v. | ) ) | Magistrate Judge Gorman |
| AUTOZONE, INC. | ) ) | |
| Defendant. | ) ) ) | |

### EEOC MOTION IN LIMINE # 2

### MOTION TO EXCLUDE REFERENCES TO UNEMPLOYMENT STATUS, PENDING CLAIM FOR BACKPAY, AND MITIGATION OF LOST WAGES

The EEOC hereby moves for the entry of an order excluding all testimony, remarks and/or questions in the presence of the jury concerning: (1) John Shepherd's unemployment status from the period January 2004 to the present; (2) the EEOC's claim for backpay; or (3) Shepherd's efforts to find other work or otherwise mitigate his lost wages after 2003. These matters are not relevant to any question that will be put to the jury at the upcoming trial. Under the ADA, backpay is determined by the Court, not the jury, and the parties have stipulated to the amount of backpay for which Autozone will be liable if Autozone is found liable for the pending claim and is determined to be liable for an award of backpay.

### Background

Shepherd worked as a Parts Sales Manager at Autozone until September 12, 2003, when he sustained an injury while performing a mopping assignment. See July 2, 2009 Stipulations, ECF Doc. No. 119 ("Stip."), Nos. 18-22, 69-71. Shepherd was not permitted to return to work at Autozone and was ultimately discharged, see Stip. Nos. 71-72, 78-79, and has not found other employment. The EEOC asserted a claim for failure to accommodate Shepherd while he was

working in 2003, as well as claims for unlawful discharge of Shepherd thereafter. The EEOC sought backpay, compensatory damages, and punitive damages for all claims.

Although Autozone initially alleged that Shepherd had not mitigated his damages, Autozone later informed the Court that discovery had revealed no basis for that defense, and the defense was stricken at Autozone's request. See ECF Doc. No. 70; Feb. 24, 2009 text-only minute order. The discharge claims were tried to a jury in September 2009. At that trial, Autozone argued — and the jury found — that after his final injury, Shepherd was not able to perform the essential functions of his job.

On April 15, 2011, the parties entered into a stipulation in which: (1) the EEOC waived any claim for compensatory damages for the period January 1, 2004, to the present; and (2) the parties agreed upon the amount of backpay for which Autozone would be liable if the EEOC prevails on the pending claim and if Autozone is determined to be liable for backpay in connection with that claim. See ECF Doc. No. 196.

**Discussion**

At the upcoming trial, the questions that remain to be decided by a jury are narrow. The claim that remains to be tried alleges that from March 2003 to September 2003, while Shepherd was still working at Autozone, the company failed to reasonably accommodate his known physical limitations, in violation of the ADA, by requiring him to perform marginal job functions (principally mopping) that could have been reassigned to other employees. The EEOC seeks compensatory damages only for pain and suffering that Shepherd experienced prior to January 1, 2004. The EEOC also seeks punitive damages.

To prevail on the reasonable accommodation claim, the EEOC must demonstrate that during the relevant portion of 2003: (1) Shepherd was a qualified individual with a disability; (2) Shepherd's physical limitations were known to Autozone; and (3) Autozone nevertheless failed to reasonably accommodate those limitations. See 42 U.S.C. § 12112(b)(5)(A) (2006);

2

EEOC v. Autozone, 630 F.3d 635, 639 (7th Cir. 2010); EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir.2005). Autozone has asserted the affirmative defense of direct threat, which requires Autozone "to show that [Shepherd] posed a direct threat to workplace safety that could not be eliminated by a reasonable accommodation." Branham v. Snow, 392 F.3d 896, 906 (7th Cir. 2004) (internal citations and quotation marks omitted).

Evidence is only relevant to this action if it is probative of a "fact that is of consequence" to one or more of the elements of the EEOC's claim or Autozone's defense. See F.R.E. 401. Even evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403.

**A.     Shepherd's Unemployment Status, 2004-Present**

That Shepherd was unemployed in 2004 and later is not probative of any of the elements of the pending claim and defense. Whether Shepherd was disabled within the meaning of the ADA from March to September 2003 involves factual determinations about whether he was substantially limited in the major life activity of caring for himself during that period of time.[1] Simply knowing that an individual was unemployed says little, if anything, about what activities of daily living he did or did not need assistance with years earlier. Shepherd's qualifications for the parts sales manager job must likewise be determined by reference to what job functions he could perform in March-September 2003.

Shepherd's unemployment status in 2004 and beyond also plainly cannot shed any light on what knowledge Autozone possessed about Shepherd's physical limitations in 2003. Nor can

---

[1] Although the duration and long-term or permanent impact of the impairment are also factors in determining disability, see Furnish v. SVI Systems, Inc., 270 F.3d 445, 450 (7th Cir. 2001), those factors are not in dispute here. It has been established by stipulation that from September 13, 2003 onward Shepherd has been substantially limited in caring for himself. See Stip. No. 60. Thus there is no dispute that Shepherd's impairment and its substantial impact have been long term. The remaining dispute focuses simply on whether that disability extends back an additional six months earlier than the period about which parties have already agreed.

3

it be probative of what actions Autozone took in 2003 or pain and suffering Shepherd experienced in 2003.

Even if the fact that Shepherd was later unemployed did have some marginal probative value, it would be clearly outweighed by the risks of unfair prejudice and confusion of the issues. Jurors presented with the fact that Shepherd has been unemployed for a long period of time will wonder about whether Shepherd has been trying (or trying hard enough) to find new work, for example. As noted below, mitigation of damages is a defense that Autozone has expressly waived, and the parties have in any event stipulated to the amount of backpay. Therefore, these questions are not at issue at this trial. Presentation of evidence about Shepherd's long-term unemployment would put the EEOC in the difficult position of either having to address an otherwise irrelevant matter (Shepherd's search for employment) or leaving the jury's questions unanswered. The risk of unfair prejudice and confusion of issues would be substantial — and entirely unnecessary since the specific questions to be put to the jury are about unrelated facts from an earlier period of time.

**B.      Claim for Backpay and Mitigation of Damages**

Backpay is determined by measuring the difference between Shepherd's "actual earnings for the period and those which [he] would have earned absent the discrimination by defendant." Horn v. Duke Homes, 755 F.2d 599, 606 (7th Cir. 1985). To "discriminate" under the ADA includes failing to accommodate the known physical limitations of a qualified individual with a disability. See 42 U.S.C. § 12112(b)(5)(A). Thus if Autozone is found to have unlawfully required Shepherd to perform the mopping assignments between March and September 2003, including the one that injured him on September 12, 2003, the EEOC will be entitled to an award for the backpay that Shepherd lost as a result.

Questions concerning backpay under the ADA are decided by the Court, not the jury. See Pals v. Schepel Buick, 220 F.3d 495, 500-01 (7th Cir. 2000) ("Back pay and front pay are

4

equitable remedies under § 706(g)(1) [of Title VII, 42 U.S.C. § 2000e-5(g)(1)] and therefore matters for the judge.... When assessing back pay, ... the judge must respect the findings implied by the jury's verdict.... But whatever discretion the facts allow with respect to back pay and front pay belongs to the judge rather than the jury."); see also 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5 into the ADA).

Accordingly, no legitimate purpose would be served by informing the jury about the pendency of a claim for backpay or evidence relevant the withdrawn mitigation of damages defense. Moreover, as a result of the parties' April 15, 2011 stipulation and prior stipulations, the amount of backpay has been agreed upon and there is no need to present evidence about the amount of Shepherd's lost wages and benefits or other data that would be needed to compute the amount of backpay.

In the event that Autozone is found liable for the reasonable accommodation claim by the jury, all that remains for the Court to determine is whether Autozone's violation of the ADA resulted in a loss of wages. Presenting evidence about that question would not require referring to the fact that the EEOC is seeking backpay, to the duration of Shepherd's unemployment after 2003, or to Shepherd's efforts to find other work.

Alternatively, to the extent the parties identify some narrow factual issue related to backpay that does require further testimony that would be inconsistent with the limits the EEOC seeks in this and its other motions in limine, the EEOC requests that such testimony be heard outside the presence of the jury. In light of what is already established, the scope of such testimony is likely to be exceedingly narrow. Shepherd is the only likely trial witness who has been disclosed by either party as having knowledge about backpay,[2] and any further examination

---

[2] The only other individual identified with knowledge related to backpay was Scott Butler, a manager Autozone identified as having knowledge about the average increase in Parts Sales Manager pay, matters which were subsequently stipulated to (Stip. No. 82) and which are in any event no longer in dispute as a result of the parties' April 15, 2011 stipulation. If Autozone does intend to have Butler testify for some reason, any testimony that he would offer that is within the scope of his disclosed knowledge and not covered by the stipulation is likely to be

of him with respect to backpay would be quite brief and could be heard by the Court at the end of the first afternoon of trial after the jury has been dismissed for the day.

**Conclusion**

The questions to be determined by the jury pertain solely to Autozone's liability in 2003, compensatory damages in 2003, and punitive damages. Accordingly Shepherd's unemployment after 2003, the pendency of a claim for backpay, and Shepherd's efforts to mitigate his lost wages are not probative of any matter to be determined by the jury. These matters present a substantial risk of unfair prejudice and confusion of the issues, as they would alert jurors to Shepherd's lengthy unemployment and the prospect that liability might result in a large award of backpay. Such considerations would present a significant risk of unfairly biasing the jury's determination of the facts relevant to the questions actually before them.

April 15, 2011
                                                                                                Respectfully submitted,

                                                                                                s/ Justin Mulaire
Trial Attorney
U.S. Equal Employment Opportunity Commission
131 M St. NE
Washington, DC 20507
202-663-4741
bar ID number: 4311031

Aaron R. DeCamp
Trial Attorney
Equal Employment Opportunity Commission
500 W. Madison St., Ste. 2000
Chicago, IL 60661
312-869-8106

---

quite brief and could be heard outside the presence of the jury at the beginning or end of the day. His deposition lasted just 35 minutes and his trial testimony would presumably be much shorter.