IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07 C 1154 |
| v. | ) ) | Magistrate Judge Gorman |
| AUTOZONE, INC. | ) ) | |
| Defendant. | ) ) | |

## AUTOZONE MOTIONS IN LIMINE

NOW COMES Defendant, AUTOZONE, INC., by and through its attorneys, Joseph F. Spitzzeri and Christopher J. Carlos of JOHNSON & BELL, LTD., and hereby move this Honorable Court for the entry of an Order, *in limine*, prohibiting the EEOC and its respective counsel, as well as all witnesses and other parties to this lawsuit, from eliciting testimony concerning, introducing evidence, alluding to and/or making any argument in the presence of the jury regarding the subject matter outlined and discussed below in sub-paragraphs A-N, and further barring mention that this motion has been filed and argued.

### A.    Witnesses Should Be Excluded From The Courtroom During Trial

At the request of a party, the court shall order witnesses excluded from the court during the taking of testimony and removed to some place where they cannot hear the testimony of any other witnesses in the case.  Fed. R. Evid. 615; *U.S. v. Olofson*, 563 F.2d 652, 660 (7th Cir. 2009).  The exclusion of witnesses rests in the discretion of the district court. *Olofson*, 563 F.2d at 660.

EEOC's suit involves genuine issues of fact regarding causation, liability and damages. It is imperative that EEOC's and AutoZone's witnesses testify from their own personal knowledge without the benefit of the testimony which preceded them. Accordingly, AutoZone requests an order, *in limine*, barring witnesses from the courtroom in accordance with this Motion.

**B.      EEOC May Not Elicit Testimony Regarding The Existence Of Insurance**

It is generally reversible error to inform the jury as to the existence or absence of insurance. Evidence of this nature is generally not admissible. Fed. R. Evid. 411; *see also Gassman v. Frischholz*, No. 05 C 5377, 2007 U.S. Dist. LEXIS 31584, at *3 (N.D. Ill. Apr. 30, 2007). The rationale underlying this rule is that such information is not only irrelevant to the determination of liability but also artificially inflates any verdict.

In *Cotter v. McKinney*, the Seventh Circuit reversed a verdict in favor of plaintiff due to his attorney's improper interjection of insurance into his closing argument. *Cotter v. McKinney*, 309 F.2d 447, 449-50 (7th Cir. 1962). The attorney in Cotter made repeated references directly to insurance in an apparent attempt to mislead the jury into believing a judgment could be rendered against another defendant/insurance company. *Id*. at 450. The court held that calling attention to the fact that accident insurance was available and providing the name of the insurance company constitutes prejudicial error. *Id*. Moreover, the Court reasoned that whether a party has someone to assist in paying a judgment, if one is rendered against him, has nothing to do with the merits of the case and would be designed only to aid the plaintiff at the expense of the defendant. *Id*. at 451.

In the instant suit, the defendant AutoZone, Inc. is insured.  The fact that AutoZone is insured neither tends to prove nor disprove any of the issues in this case and has no possible bearing on the question of damages at issue in this case.  The EEOC, as well as all witnesses and other parties to this lawsuit, should be prohibited from using any testimony, remarks, questions, items of evidence, or arguments which might require any testimony or offer of evidence concerning the existence of insurance or disclosing the existence of the fact that the defendants are insured to the jury.

It is further believed that certain documentary evidence that has been exchanged in the case contain references to insurance, insurance providers and the like.  AutoZone seeks to bar the EEOC from introducing any documentary evidence that would directly or indirectly violate this order, and alerting the jury to the existence of insurance for the defendant in the instant case.  AutoZone requests that any documents displayed to the jury and /or offered into evidence that contain reference to insurance be redacted so that any reference to insurance is removed therefrom.  AutoZone also requests an opportunity to examine any documents displayed to the jury and/or offered into evidence prior to publication to confirm that any reference to insurance has been redacted therefrom.  Accordingly, AutoZone respectfully requests this court to instruct the EEOC and its respective counsel, as well as all witnesses and other parties to this action not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner whatsoever, either directly or indirectly, the fact that there was insurance for any of the work at issue.  Furthermore, AutoZone requests that no mention be made hat the defendant was insured as it relates to this occurrence, and that no reference be made to the fact that this motion has been filed and argued.

**C.   John And Susan Shepherd May Not Testify As To Hearsay Statements Of John Shepherd's Physicians**

The general rule is that hearsay statements are not admissible.  Fed. R. Evid. 802.  There are however, certain exceptions to the rule.  Statements made for purposes of medical diagnosis are allowed as an exception to Rule 802.  *See* Fed. R. Evid. 803(4).  This rule is an exception allowing statements made by a person seeking medical attention to a physician for purposes of diagnosis.  *Gong v. Hirsch*, 913 F.2d 1269, 1273-74 (7th Cir. 1990).  However, in no uncertain terms does this exception apply to statements made by the medical provider to the patient.  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996).

In *Bombard*, the court rejected testimony offered by the plaintiff regarding his physician's statements to him as inadmissible hearsay.  The plaintiff argued that the statement was offered for purposes of establishing that he was capable of performing the essential functions of his job.  *Id.*  Nonetheless, the court rejected this argument and held that statements made by a provider do not fall under the exceptions to the hearsay rule.  *Id.*

Similarly, neither John Shepherd nor Susan Shepherd are entitled to testify regarding any statements made by Mr. Shepherd's medical care providers as to his condition, prognosis, and future treatment.  Such statements are clearly incompetent hearsay and should be prohibited.  As a result, this court should instruct John and Susan Shepherd, the EEOC and its respective counsel, and all non-medical witnesses not to mention, refer to, interrogate concerning, or attempt to convey to the jury any statements made by John Shepherd's medical care providers.  Additionally, no reference should be made that this motion has been filed and argued.

**D.      Testimony Regarding John Shepherd's Alleged Inability to Reproduce And Any Accommodation Sought From AutoZone Therefor Should Be Barred**

AutoZone requests an order, *in limine*, excluding testimony, remarks, or questions that pertain solely to Shepherd's ability to reproduce or to the EEOC's contention about limitations to that major life activity.

The EEOC has represented to AutoZone that at the trial set to begin on June 1, 2011, the EEOC will contend that John Shepherd was substantially limited in the major life activity of caring for himself during the relevant time period, and the EEOC will not rely upon its contention that Shepherd was substantially limited in the major life activity of sexual reproduction. The EEOC consents to this motion.

**E.      EEOC May Not Introduce Evidence Concerning AutoZone's Net Worth Or Corporate Nature**

In order for evidence to be admissible, such evidence must be relevant to the facts or issues before the trier of fact. Fed. R. Evid. 401. References to the financial position of a party are improper and irrelevant. *Adams Laboratories, Inc. v. Jacobs Engineering Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3rd Cir. 1978). Similarly, references to the corporate nature of a defendant are improper to evoke any prejudices the jury might have against corporations generally. *Id.* Any reference or innuendo as to the corporate nature and size of Defendant as compared to Shepherd's position would only serve to inflame the jury and invite improper speculation in comparison to the plaintiff's claim for damages. Such references or innuendos would clearly prejudice the defendant in this case and would constitute reversible error.

AutoZone anticipates that the EEOC will argue that net worth is relevant to its punitive damages claim. The parties supplied the court with statements of all of the relevant facts in this litigation during the briefing on summary judgment. There were no facts presented which would support an award of punitive damages. AutoZone provided diversity training, including ADA training to all of its employees. *See* (Steven Smith Dep. p. 11-12); (Teresa James Dep. p. 17:23-25, p. 18:1-14); (Karen Miller Dep. p. 13-14). AutoZone had a diversity statement in its employee manuals. *See* (Steven Thompson Dep. p. 16-17). All of the AutoZone employees involved in this litigation had diversity training, including ADA training. *Id.*

Diversity training is a defense to punitive damages claims. In the punitive damages context, an employer may not be vicariously liable for the discriminatory decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with federal antidiscrimination laws. The U.S. Supreme Court has set forth the elements that a plaintiff must establish in order to receive punitive damages under the Civil Rights Act of 1991. According to the statute the employer must act with malice or reckless indifference to the plaintiff's federally protected rights. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 661 (7th Cir. 2001). Once the plaintiff has met the burden of showing the employer acted with the requisite mental state, the employer may still avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy. *Id.* As stated above, there is no evidence of malice or reckless indifference on the part of AutoZone. Furthermore, there is no question that AutoZone engaged in good faith efforts to implement a company-wide effort in favor of an anti-discrimination policy. Accordingly, punitive damages are not appropriate in this context. Therefore, any attempt to utilize the theory of punitive damages to discuss the corporate nature or net worth should be denied by this court.

**F.      Opinion Testimony Of Lay Witnesses Should Be Barred**

If a witness is not testifying as an expert, testimony based on scientific, technical other specialized knowledge within the scope of Rule 702 is prohibited.  Fed. R. Evid. 701.  In order to express an opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult.  *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000).

Neither John Shepherd nor his wife Susan Shepherd has any specialized knowledge, skill, experience, training or education in medicine.  Allowing either of them to offer testimony diagnosing plaintiff's medical condition at any time relevant to this proceeding would fly in the face of the Federal Rules of Procedure and constitute an unfair prejudice to AutoZone.  *See* Fed. R. Evid. 702.  Accordingly, AutoZone respectfully requests this Court for the entry of an Order, *in limine*, prohibiting the Plaintiff, its counsel and all other lay witnesses to this lawsuit, from offering any testimony, remarks, questions, items of evidence, arguments, or implications based on scientific, technical or other specialized knowledge within the scope of Rule 702.

**G.      Plaintiff Should Be Barred From Offering Evidence Relating To An Alleged "Rat Incident" Between John Shepherd And AutoZone Employees**

The relevant issues in this case focus on John Shepherd's alleged disability, AutoZone's duty to reasonably accommodate his alleged disability, and whether AutoZone reasonably accommodated his alleged disability during his course of employment with AutoZone.  This case has nothing to do with alleged pranks between AutoZone employees and allowing testimony regarding such topics would only serve to prejudice AutoZone and invoke sympathy from a jury.

Nonetheless, during her deposition, Susan Shepherd offered testimony regarding what she was told by John Shepherd about an alleged incident at an AutoZone store.  Susan Shepherd testified that her husband told her that someone put a rodent in his mailbox at work that had a

7

mangled leg. *See* (Susan Shepherd Dep. p. 22:13-23).  Furthermore, Susan Shepherd testified that she thought that her husband told her that he thought it was Don Weir who was behind the joke. *See* (Susan Shepherd Dep. p. 23: 23-24, 24: 1).  Finally, Susan Shepherd testified that she guessed it happened on two occasions, not just once. *See* (Susan Shepherd Dep. p. 23:20-21).  This testimony is hearsay, irrelevant and speculative at best.

The Federal Rules of Evidence make very clear that only relevant evidence shall be admitted at trial, and all irrelevant testimony will be excluded.  Rule 402 of the Federal Rules of Evidence clearly states "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The question of whether evidence is relevant is one based in experience and logic.  Fed. R. Evid. 402 advisory committee's note.  The above referenced testimony of Susan Shepherd not only constitutes inadmissible hearsay, *See* Fed. R. Evid. 802, but it is also irrelevant as it has no probative value and does nothing to assist the trier of fact in making a determination as to the ultimate issues in this case.  It would, however, be highly prejudicial to AutoZone.  The only foreseeable basis for offering this testimony would be to invoke sympathy from a jury and distract it from the ultimate issues at hand.  As a result of the forgoing, AutoZone respectfully requests this court for the entry of an Order, *in limine*, prohibiting the EEOC, John Shepherd and Susan Shepherd from using any testimony, remarks, questions, items of evidence, or arguments which might require any testimony or offer of evidence regarding an alleged incident at an AutoZone store wherein a mouse was placed in John Shepherd's mailbox.

**H.    Any Allegation Regarding AutoZone's Adverse Employment Actions Against John Shepherd Outside of March - September 12, 2003 is Irrelevant**

The Federal Rules of Evidence make very clear that only relevant evidence shall be admitted at trial, and all irrelevant testimony will be excluded. Rule 402 of the Federal Rules of Evidence clearly states "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The question of whether evidence is relevant is one based in experience and logic. *Id.* According to the decisions of the Seventh Circuit, a trial court possesses broad discretion in determining the relevance of proffered evidence, and its decision will not be disturbed on appeal absent a clear showing that the court abused its discretion. *United States v. Green*, 735 F.2d 1018, 1026 (7th Cir. 1984); *United States v. Solomon*, 688 F.2d 1171, 1178 (7th Cir. 1982).

Prior to the trial in this matter, AutoZone filed a Motion for Summary Judgment raising many arguments, including that John Shepherd was not a qualified individual with a disability as defined by the Americans with Disabilities Act for the time period prior to his September 12, 2003 injury. In a June 16, 2009 order on AutoZone's Motion for Summary Judgment, this court found that John Shepherd failed to establish a prima facie case against AutoZone for a failure to accommodate during the time period of March - September 12, 2003. (See this Court's June 16, 2009 order, p. 25-26, attached as Exhibit 1).

On September 28 -30, 2009, the parties in this matter participated in a jury trial on all remaining issues. Specifically, the issues addressed at trial were all allegations made by the EEOC relative to adverse employment action taken by AutoZone against Shepherd after September 12, 2003. On September 30, 2009, a jury ruled in favor of Defendant AutoZone on

all claims.  This court entered a Judgment order confirming the jury's findings on October 1, 2009.  (A copy of the Judgment Order is attached as Exhibit 2).

Following trial, the EEOC filed a post trial motion to Amend the Judgment and for a new trial on the reasonable accommodation claim for the period of March through September 12, 2003.  This motion was denied in a December 14, 2009 order authored by this court.  (A copy of the December 14, 2009 order is attached as Exhibit 3).

The EEOC then appealed this court's December 14, 2009 order.  The Seventh Circuit Court of Appeals reversed this court's opinion finding that the EEOC did establish a prima facie case for its reasonable accommodation claim for the time period of March through September 12, 2003.  It remanded the matter back to this court for further proceedings consistent with its findings.  (A copy of the 7th Circuit opinion is attached as Exhibit 4).

As a result of these findings, any testimony or reference to any alleged failure by AutoZone or its employees to accommodate Shepherd outside of the time period of March through September 12, 2003 is irrelevant to this matter and will only serve to unfairly prejudice AutoZone.  Reference to any alleged adverse employment action taken by AutoZone against plaintiff outside of March through September 12, 2003 is irrelevant as it carries no probative value as to the determination whether AutoZone failed to accommodate Shepherd during the relevant time period.  Furthermore, a jury has already decided all allegations of adverse employment action by AutoZone against Shepherd after September 12, 2003.  Similarly, any references to conversations by and between AutoZone employees (specifically Steve Smith or Steven Thompson) or AutoZone employees and John Shepherd or Terry Wilmot relative to accommodating John Shepherd outside of the March through September 12, 2003 time period are irrelevant and should be barred.

I.      **The EEOC May Not Elicit Testimony Regarding The Medical Condition Of Britney Shepherd**

The relevant issues in this case focus on John Shepherd's alleged disability, AutoZone's duty to reasonably accommodate his alleged disability, and whether AutoZone reasonably accommodated his alleged disability during his course of employment with AutoZone between March and September 12, 2003. Britney Shepherd is not a charging party to this case and never has been. Her medical condition is irrelevant and allowing testimony regarding the same would only serve to prejudice AutoZone and invoke sympathy from a jury.

During her deposition, Susan Shepherd referenced the fact that her daughter has a kidney disease and that she stays home to care for her daughter. (Susan Shepherd Dep. p. 5:13-17). This testimony is not only irrelevant, it is also a violation of Rule 701 and 702 of the Federal Rules of Evidence which prohibits lay witnesses from offering testimony regarding scientific, technical or other specialized knowledge without adequate skill, experience, training or education.

The Federal Rules of Evidence makes very clear that only relevant evidence shall be admitted at trial, and all irrelevant testimony will be excluded. Rule 402 of the Federal Rules of Evidence clearly states "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. The question of whether evidence is relevant is one based in experience and logic. Fed. R. Evid. 402 advisory committee's note. Reference to the medical condition of Britney Shepherd is irrelevant as it has no probative value and does nothing to assist the trier of fact in making a determination as to the ultimate issues in this case. It would, however, be highly prejudicial to AutoZone. The only foreseeable basis for

offering this testimony would be to invoke sympathy from a jury and distract it from the ultimate issues at hand.

Additionally, if a witness is not testifying as an expert, testimony based on scientific, technical other specialized knowledge within the scope of Rule 702 is prohibited. Fed. R. Evid. 701. In order to express an opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult. *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000).

Neither John Shepherd nor his wife Susan Shepherd, or any lay witness in this matter has any specialized knowledge, skill, experience, training or education in medicine. Allowing any lay witness to offer testimony diagnosing or even referencing Britney Shepherd's medical condition at any time relevant to this proceeding would fly in the face of the Federal Rules of Procedure and constitute an unfair prejudice to AutoZone. *See* Fed. R. Evid. 702. Accordingly, AutoZone, Inc. respectfully request this court for the entry of an Order, *in limine*, prohibiting the Plaintiff and its respective counsel, all attorneys of record, as well as all witnesses and parties to this lawsuit, from using any testimony, remarks, questions, items of evidence, or arguments which might require any testimony or offer of evidence regarding the medical condition of Britney Shepherd to the jury.

### J.      The EEOC May Not Elicit Testimony Regarding The Medical Condition Of Susan Shepherd

The relevant issues in this case focus on John Shepherd's alleged disability, AutoZone's duty to reasonably accommodate his alleged disability, and whether AutoZone reasonably accommodated his alleged disability during his course of employment with AutoZone between March and September 12, 2003. Susan Shepherd is not a charging party to this case and never

has been. Her medical condition is irrelevant and allowing testimony regarding the same would only serve to prejudice AutoZone and invoke sympathy from a jury.

It has come to the attention of AutoZone counsel that Susan Shepherd suffers from an undisclosed medical condition. This information is not only irrelevant, but allowing testimony regarding this subject matter is also a violation of Rules 701 and 702 of the Federal Rules of Evidence which prohibit lay witnesses from offering testimony regarding scientific, technical or other specialized knowledge without adequate skill, experience, training or education. Fed. R. Evid. 701, 702.

The Federal Rules of Evidence make very clear that only relevant evidence shall be admitted at trial, and all irrelevant testimony will be excluded. Rule 402 of the Federal Rules of Evidence clearly states "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. The question of whether evidence is relevant is one based in experience and logic. Fed. Rule Evid. 402 advisory committee's note. Reference to the medical condition of Susan Shepherd is irrelevant as it has no probative value and does nothing to assist the trier of fact in making a determination as to the ultimate issues in this case. It would, however, be highly prejudicial to AutoZone. The only foreseeable basis for offering this testimony would be to invoke sympathy from a jury and distract it from the ultimate issues at hand.

Additionally, if a witness is not testifying as an expert, testimony based on scientific, technical other specialized knowledge within the scope of Rule 702 is prohibited. Fed. R. Evid. 701. In order to express an opinion, the witness must possess some experience or expertise

beyond that of the average, randomly selected adult. *United States v. York*, 572 F.3d 415 (7th Cir. 2009); *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000).

Neither John Shepherd nor his wife Susan Shepherd, or any lay witness in this matter has any specialized knowledge, skill, experience, training or education in medicine. Allowing any lay witness to offer testimony diagnosing or even referencing Susan Shepherd's medical condition at any time relevant to this proceeding would fly in the face of the Federal Rules of Procedure and constitute an unfair prejudice to AutoZone. *See* Fed. R. Evid. 702. For the stated reasons, AutoZone, Inc. respectfully request this court for the entry of an Order, *in limine*, prohibiting the Plaintiff and its respective counsel, all attorneys of record, as well as all witnesses and parties to this lawsuit, from using any testimony, remarks, questions, items of evidence, or arguments which might require any testimony or offer of evidence regarding the medical condition of Susan Shepherd to the jury.

### K. The EEOC Should Be Barred From Introducing Any Evidence Regarding Terry Wilmot's Daughter's Accident Or Alleged Phone Calls From Steven Smith While On FMLA

The relevant issues in this case focus on John Shepherd's alleged disability, AutoZone's duty to reasonably accommodate his alleged disability, and whether AutoZone reasonably accommodated his disability during his course of employment with AutoZone between March and September 12, 2003. This case has nothing to do with Terry Wilmot's daughter or her injuries. Allowing testimony regarding Wilmot's daughter's medical condition would only serve to prejudice AutoZone and distract a jury from the relevant factors in this case.

During his deposition, Terry Wilmot offered testimony regarding a period of time that he alleged to be on Family Medical Leave due to the fact that his daughter was in an accident and struck by a motor vehicle. *See* (Terry Wilmot Dep. p. 15-24.) He further referenced the fact that he was in the hospital and had a phone conversation with Steven Smith. This testimony is irrelevant and has no probative value. Furthermore, it would only serve to prejudice AutoZone in the eyes of the jury.

The Federal Rules of Evidence make very clear that only relevant evidence shall be admitted at trial, and all irrelevant testimony will be excluded. Rule 402 of the Federal Rules of Evidence clearly states "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The question of whether evidence is relevant is one based in experience and logic. Fed. R. Evid. 402 advisory committee's note. The above referenced testimony of Terry Wilmot is irrelevant and is in no way helpful to the finder of fact in deciding the ultimate issues in the case. The fact that Terry Wilmot's daughter was injured and in the hospital, and that he had conversations with Steve Smith has nothing to do with allegations that AutoZone failed to accommodate Shepherd. It would, however, be highly prejudicial to AutoZone to allow this testimony before a jury. The only conceivable basis for allowing this testimony is to arouse anger from the jury and distract it from the ultimate issues at hand. Therefore, defendant, AutoZone, Inc. respectfully requests this court for the entry of an Order, *in limine*, prohibiting the EEOC from using any testimony, remarks, questions, items of evidence, or arguments which might require any testimony or offer of evidence regarding his

Terry Wilmot's daughter's accident and injuries and alleged phone calls with Steve Smith while he was at the hospital with his daughter and on Family Medical Leave.

**L. Dr. Marc Katchen Should Be Barred from Offering Causation, Prognosis/Permanency And/Or Life Expectancy Opinions**

1. Federal Rule of Evidence 702 and Daubert

Federal Rule of Evidence 702 defines an "expert" as a person who possesses "specialized knowledge" due to his "skill, experience, training, or education" that "will assist the trier of fact to understand the evidence or to determine a fact in issue". Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that it is the district court's role to act as a gatekeeper before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *See also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010). Medical opinions based upon mere "hunches" or those that lack "scientific rigor" do not survive the *Daubert* test. *See Rosen v. Cib-Geigy Corp*, 78 F.3d 316, 319 (7th Cir. 1996) (affirming the exclusion of a doctor's opinion on the grounds that it was a mere "hunch" and "lack[ed] scientific rigor"). Medical opinions cannot be admitted when a physician intends to give opinions unsupported by any method. *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 615 (7th Cir. 1993). A physician may not present opinions simply because he is an "experienced physician". *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 674-75 (7th Cir. 2009). It is against this backdrop of case law that we examine the disclosed, underlying basis, for Dr. Katchen's causation opinions in this matter.

2. Dr. Katchen's Treatment of John Shepherd

At the outset, it should be noted that the EEOC neither filed nor provided a Rule 26(a)(2) report from Dr. Katchen. AutoZone understands that Dr. Katchen never prepared a Rule

26(a)(2) report.  For the reasons stated infra in Section VI of this Motion, a Rule 26(a)(2) report was required from Dr. Katchen for any causation opinions exceeding the scope of his treatment of Mr. Shepherd.  *See Meyers v. National Railroad Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010).

Dr. Katchen gave his deposition in this matter on December 22, 2008.  (See the transcript of the deposition of Dr. Marc Katchen attached hereto and marked as Exhibit 5).  Dr. Katchen testified that he treated Mr. Shepherd on and off from January 19, 1998 to September 25, 2008. On January 19, 1998, Mr. Shepherd showed symptoms of myofascial tenderness which had not improved as expected with the previous treatments.  (Exhibit 5, Page 11, lines 17 – 23 and page 12, lines 1-14).  Myofascial tenderness refers to pain on pressure of pressing through the skin into the muscle tissue.  (Exhibit 5, page 12, lines 15 - 18).

In June of 1998, Dr. Katchen was asked to again examine Mr. Shepherd to determine if Mr. Shepherd had reached maximum medical improvement.  (Exhibit 5, page 14, lines 9 -23 and page 15, lines 1-8).  Dr. Katchen authored a letter dated June, 30, 1998 noting that Mr. Shepherd had persistent soft tissue injury, the myofascial pain, which was relieved in the past with the trigger point injections, but he was unable to continue those, or therapy.  (Exhibit 5, Page 15, lines 9 - 19).

Dr. Katchen next saw Mr. Shepherd on April 16, 1999. (Exhibit 5, page 15, lines 20 - 23). At that time, Mr. Shepherd had been working at AutoZone as a sales person for about a year. (Exhibit 5, page 16, lines 12 – 14).  Mr. Shepherd indicated that he could sweep the floors, but had difficulty mopping and was unable to lift cases of oil. (Exhibit 5, page 16, lines 14 -16). Again, the same diagnosis, the chronic myofascial pain, seemed like now a little bit worse - no treatment for a long time.  (Exhibit 5, page 16, lines 20 - 23).  Dr. Katchen's conclusion after

seeing Mr. Shepherd on April 16, 1998 was the same - chronic myofascial pain, now worse after activity, resulting in headaches.  (Exhibit 5, page 17, lines 20 – 23 and page 18, lines 1-2).

The next time Dr. Katchen saw Mr. Shepherd was June, 28, 2002. (Exhibit 5, page 18, lines 15 – 23 and page 19, lines 1 - 6).  Dr. Katchen authored a June 28, 2002 script keeping Mr. Shepherd off of work due to his myofascial pain until July 5, 2002. (Exhibit 5, page 22, lines 1 – 6).  Dr. Katchen continued to place Mr. Shepherd off of work from time to time.  It was Dr. Katchen's recollection that when Mr. Shepherd was off work he was being sent to therapy or some form of rehabilitation to try and get him back to work.  (Exhibit 5, page 27, lines 1 - 20).

Dr. Katchen authored an April 9, 2003 AutoZone physical capability form he signed for Mr. Shepherd.  Dr. Katchen noted that due to previous re-aggravating injuries caused by mopping, which appears to have created an even more serious condition, this and similar activities as operating a floor buffer, should be avoided totally.  (Exhibit 5, page 33, lines 7 - 17).  As of April 9, 2003, there was also a limit of standing for 8 hours and alternate sitting and standing every 4 hours.  (Exhibit 5, page 34, lines 3 - 8).  Dr. Katchen placed no restriction on Mr. Shepherd's daily work hours as of April 2003.  (Exhibit 5, page 35, lines 1 – 5).

On April 1, 2004, Dr. Katchen's assessment was low back pain, depression secondary to the circumstances without any further explanation as to what those circumstances were or the basis for Dr. Katchen's opinion.  (Exhibit 5, page 37, lines 22 – 23 and page 38, lines 1 - 8).  Dr. Katchen's July 2, 2004 notes reflect that Mr. Shepherd's depression was a little bit better on the Zoloft.  (Exhibit 5, page 42, lines 2 - 3).

Despite the EEOC's direct question during his deposition, Dr. Katchen never gave a specific opinion causally relating Mr. Shepherd's depression to his loss of employment from AutoZone.  (Exhibit 5, page 59, lines 6 – 19).  The best Dr. Katchen could offer was: "I think

hopefully most people are better off when they have a job and they are able to provide for their family. So I would think, yeah, if he could, that would certainly help him. It'd be one step in the right direction." (Exhibit 5, page 60, lines 11 – 19). Dr. Katchen opined that he "thought" Shepherd's re-employment would improve Mr. Shepherd's depression. (Exhibit 5, page 60, lines 20 -23 and page 61, lines 1 – 2). Dr. Katchen did not offer any further basis for his "hunch" and his opinion certainly lacks "scientific rigor".

On June 12, 2006, Dr. Katchen's assessment was major depression, did well on the Zoloft, myofascial pain, increased marital stress; also complained of having coitus affected by his neck and back pain. (Exhibit 5, page 45, lines 2 – 10). Dr. Katchen's notes offered no further comment regarding the coitus limitations. In response to EEOC questioning, Dr. Katchen offered the general opinion that in his experience movement interferes with coitus in both pain patients and patients with movement limitations. (Exhibit 5, page 61, lines 3 – 17). There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor".

On March 13, 2007, Mr. Shepherd complained of having sleep apnea spells for the last 6 months. (Exhibit 5, page 46). Dr. Katchen could not identify the specific cause of Mr. Shepherd's sleep apnea, noting that sleep apnea causes are different for different people. (Exhibit 5, pg 47, lines 20-23 and pgs 48 – 49, line 1). Dr. Katchen was unable to state the specific cause in Mr. Shepherd's case as there wasn't a specific test to see the etiology. (Exhibit 5, page 48, lines 8-11). The best Dr. Katchen could do was to state that Mr. Shepherd's inactivity could lead to sleep apnea, "maybe". (Exhibit 5, page 48, lines 12-19). At the time of his deposition testimony, Dr. Katchen could not render an opinion whether Mr. Shepherd's sleep apnea was caused by inactivity. (Exhibit 5, page 48, lines 20 – 23 and page 49, line 1). Dr.

Katchen's notes make no further reference to the sleep apnea. There was no further enunciation of the basis of Dr. Katchen's opinion in this regard. Dr. Katchen's "hunch" is not supported with "scientific rigor".

At his last visit of September 28, 2008, Dr. Katchen's assessment was the same; chronic myofascial pain, depression, marital stress and hypertension. (Exhibit 5, page 50, lines 22 – 23 and page 51, lines 1 - 8). There was no further appointment scheduled with Dr. Katchen as of September 28, 2008. (Exhibit 5, page 51, lines 8 – 14).

> 3.    Dr. Katchen Is Not Qualified To Offer Opinion Testimony As To John Shepherd's Alleged Depression, Inability To Reproduce or Sleep Apnea

AutoZone moves to bar Dr. Marc Katchen from offering any testimony or opinions relative to John Shepherd's depression, inability to reproduce or sleep apnea as his testimony fails to meet the criteria for relevance and reliability required by Fed. R. Evid. 702 and Fed. R. Evid. 104(a), and embraced by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579; 113 S. Ct. 2786 (1993).

The trial court must act as a gatekeeper, screening purported scientific evidence to ensure reliability. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); M. Graham, Federal Practice and Procedure: Evidence § 6652 (interim edition)(1995 Supp.) The purpose of the gatekeeper function of the court is to protect juries from the effect of "powerful and quite misleading" expert testimony which may be offered without basis. *Daubert*, 509 U.S. at 595. The party who proffers an expert's testimony bears the burden of establishing its admissibility by a preponderance of proof. *Schmaltz v. Norfolk and Western Ry. Co.*, 878 F. Supp. 1119; 42 Fed. R. Evid. Serv. 77 (N.D.Ill. 1995).

The *Daubert* court identified four nonexclusive guideposts for determining whether expert testimony can be characterized as a scientific opinion: (1) whether the theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known potential rate of error; and (4) the general acceptance of the theory in the scientific community. *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 642 (7th Cir. 1995); *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 344 (7th Cir. 1994); *Daubert*, 509 U.S. at 591-95, 113 S.Ct. at 2796-97. The most important of these four factors is whether the proffered testimony has been tested. *Stanczyk v. Black & Decker, Inc.*, 836 F.Supp. 565, 567 (N.D.Ill. 1993). "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified." *Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796.

In discussing scientific knowledge, the Court in *Daubert* explained:

> The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. . . Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguable, there are no certainties in science. . . but, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation –i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert*, 509 U.S. at 590

Lastly, scientific evidence which is only set forth for purposes of litigation, as in the instant case, should be scrutinized at a higher level. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Dr. Katchen is a neurologist. A neurologist is a physician who deals with the nervous system. He was board certified in neurology in 1989. (See Exhibit 5, and Dr. Katchen's curriculum vitae attached as Exhibit 1 thereto). He practiced neurology from 1982 – present.

He has no specialized training in reproductive sciences.  Based on the above information alone, Dr. Katchen is not qualified to render opinion testimony regarding John Shepherd's alleged inability to reproduce.  *See Wilson v. City of Chicago*, 6 F.3d 1233, 1239 (7th Cir. 1993) (holding that the opinion testimony of a pathologist was properly excluded because a "pathologist", which is to say an expert on postmortems" is not an expert on the effects of electroshock treatments on the human body and psyche).  Further, there is no evidence that Dr. Katchen is qualified to render opinions regarding depression or sleep apnea.

Additionally, as of the date of this motion, Dr. Katchen has offered no scientific evidence supporting opinions regarding the causation of John Shepherd's alleged depression, inability to reproduce or sleep apnea.  During his deposition, Dr. Katchen never gave a specific opinion causally relating Mr. Shepherd's depression to his loss of employment from AutoZone.  (Exhibit 5, page 59, lines 6 – 19).  The best Dr. Katchen could offer was: "I think hopefully most people are better off when they have a job and they are able to provide for their family.  So I would think, yeah, if he could, that would certainly help him.  It'd be one step in the right direction." (Exhibit 5, page 60, lines 11 – 19).  Dr. Katchen opined that he "thought" Shepherd's re-employment would improve Mr. Shepherd's depression.  (Exhibit 5, page 60, lines20 -23 and page 61, lines 1 – 2).  Dr. Katchen did not offer any further basis for his "hunch" and his opinion certainly lacks "scientific rigor".

During his deposition, Dr. Katchen offered the general opinion that in his experience movement interferes with coitus in both pain patients and patients with movement limitations.  (Exhibit 5, page 61, lines 3 – 17).    There was no further enunciation of the basis of Dr. Katchen's opinion in this regard.  Dr. Katchen's "hunch" is not supported with "scientific rigor".  Dr. Katchen mentions nothing about Shepherd's ability to reproduce.  In fact, he doesn't even

say that Shepherd can't engage in intercourse.  He merely says it can be painful.  Dr. Katchen did

no testing of Shepherd's ability to reproduce.  Thus, he has no scientific foundation supporting

any theories relating to Shepherd's alleged inability to reproduce.  Finally, during his deposition,

Dr. Katchen could not identify the specific cause of Mr. Shepherd's sleep apnea, noting that

sleep apnea causes are different for different people.  (Exhibit 5, pg 47, lines 20-23 and pgs 48 –

49, line 1).  Dr. Katchen was unable to state the specific cause in Mr. Shepherd's case as there

wasn't a specific test to see the etiology.  (Exhibit 5, page 48, lines 8-11).  The best Dr. Katchen

could do was to state that Mr. Shepherd's inactivity could lead to sleep apnea, "maybe".

(Exhibit 5, page 48, lines 12-19).  At the time of his deposition testimony, Dr. Katchen could not

render an opinion whether Mr. Shepherd's sleep apnea was caused by inactivity.  (Exhibit 5,

page 48, lines 20 – 23 and page 49, line 1).  Dr. Katchen's notes make no further reference to the

sleep apnea.  There was no further enunciation of the basis of Dr. Katchen's opinion in this

regard.  Dr. Katchen's "hunch" is not supported with "scientific rigor".

Dr. Katchen's "opinions" regarding Mr. Shepherd's coitus issues, depression and sleep

apnea is nothing more than "hunches" lacking "scientific rigor" and are not admissible.  *Rosen v.*

*Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (affirming the exclusion of a doctor's

opinion on the grounds that it was a mere "hunch" and "lack[ed] scientific rigor").  Medical

opinions cannot be admitted when a physician intends to give opinions unsupported by any

method.  *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 615 (7th Cir. 1993).  A physician

may not present opinions simply because he is an "experienced physician".  *Cunningham v.*

*Masterwear Corp.*, 569 F.3d 673, 674-75 (7th Cir. 2009).  Admission of Dr. Katchen's above

noted opinions would violate each of the above cited cases.

4.    <u>Dr. Katchen Cannot Provide Prognosis or Permanency Opinions</u>

It has been noted that to form a proper bases for recovery from permanent injuries, it is necessary that the consequences relied on must be reasonably certain to result from the original injury. *Shelton v. Thomson*, 148 F.2d 1, 4 (7th Cir. 1945), *citing Lauth v. Chicago Union Traction Co.*, 244 Ill. 244, 251, 91 N.E. 431, 434 (1910). During his deposition, Dr. Katchen provided no opinion regarding the permanency of Mr. Shepherd's alleged conditions nor did he opine that they were reasonably certain to result from the September 2003 incident. He cannot be allowed to do so now. Any such opinions would violate Rule 702 of the Federal Rules of Evidence, *Daubert* and the cases cited in Section IV above. Prognosis and permanency opinions would also violate the report requirement of Rule 26(a)(2) noted in Section VI below.

Furthermore, a treating physician may not testify at trial regarding his present opinions of a patient's permanency or prognosis unless the opinion is based upon a recent examination. *Marchese v. Vincelette*, 261 Ill.App.3d 520, 633 N.E.2d 877, 880 (1st Dist. 1994). A present opinion based upon an examination a number of years prior to trial cannot represent an opinion at the time of trial. *Henricks v. Nyberg, Inc.*, 41 Ill.App.3d 25, 353 N.E.2d 273 (1st Dist. 1976) (Because expert testimony must be founded upon facts and not conjecture, an opinion at trial based upon an exam performed three years prior would be unreliable). *See also Knight v. Lord*, 271 Ill.App.3d 581, 648 N.E.2d 617, 620 (4th Dist. 1995) (Twenty-eight month gap between examination and trial renders the opinion unreliable an inadmissible). Dr. Katchen last saw Mr. Shepherd on September 28, 2008 and no further appointment was scheduled with Dr. Katchen at that time. (Exhibit 5, page 50, lines 22 – 23 and page 51, lines 1 - 14). Dr. Katchen cannot render a present opinion based upon an examination over 2.5 years prior to trial as it does not represent an opinion at the time of trial and is therefore unreliable.

5.      Dr. Katchen Should Be Barred From Giving Opinions For Failing to
        Provide a Rule 26(a)(2) Report

In *Meyers v. National Railroad Passenger Corporation*, 619 F.3d 729 (7th Cir. 2010), the

7th Circuit held that:

> A treating physician who is offered to provide expert testimony as to the cause of
> the plaintiff's injury, but who did not make that determination in the course of
> providing treatment, should be deemed to be one "retained or specially employed
> to provide expert testimony in the case," and thus is required to submit an expert
> report in accordance with Rule 26(a)(2). *Meyers*, 619 F.3d at 734-35.

Meyers was a pipefitter responsible for a variety of repair work on railroad cars which at

times required heavy lifting, carrying, reaching, pulling, twisting, and other repetitive motions.

He was diagnosed with spondylosis in the cervical spine, spinal stenosis, mild disc protrusion,

and degenerative joint disease in the left shoulder.  He was also diagnosed with carpal tunnel

syndrome, bilateral shoulder rotator cuff tendinitis, low back pain, and degenerative joint disease

in the knees.  Meyers claimed he had been exposed to excessive and harmful cumulative trauma

since he began working for Amtrak and filed a FELA action against Amtrak.  Meyers offered

expert testimony in the form of reports prepared by his treating physicians.  The reports of the

treating physicians failed to set forth the support for their conclusions and made no mention of

any underlying methodology used to reach their opinions.

At the close of discovery, Amtrak moved to strike the reports, affidavits and opinions of

the treating physicians pursuant to Rule 702 of the Federal Rules of Evidence, *Daubert*, and for

failing to comply with the requirements for expert reports set forth in Rule 26(a)(2) of the

Federal Rules of Civil Procedure.  The District Court granted Amtrak's motion pursuant to Rule

702, *Daubert*, and for failing to meet the requirements of Rule 26(a)(2).  The District Court

noted the reports were merely "conclusory" and they did not provide sufficient information as to

how and why such conclusions were reached.

The 7th Circuit agreed with the District Court's analysis and rulings. Noting its comments in *Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004), that "some district courts have suggested that if the Rule 26(a)(2) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary", *Musser*, 356 F.3d at 758, n.3, the 7th Circuit concluded that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case" and thus is required to submit an expert report in accordance with Rule 26(a)(2).

As noted above, there is no evidence suggesting that Dr. Katchen previously considered or determined the cause of Mr. Shepherd's alleged coitus limitations, depression or sleep apnea injuries during the course of treatment. As a result, Dr. Katchen was required to provide an expert report in accordance with Rule 26(a)(2). Said report is required to include the "basis and reasons" for his conclusions. Unlike *Meyers* where reports were in fact provided but failed to meet the requirements of Rule 26(a)(2), here Dr. Katchen failed to provide a report whatsoever and his records noted above are remarkably sparse making it impossible to tell what he was thinking about Mr. Shepherd's injuries prior to testifying at his deposition. In fact, Dr. Katchen's deposition testimony fails to comply with the strict requirements of Rule 26(a)(2) for opinion disclosure.

For these reasons, this court should exclude Dr. Katchen's opinions concerning the causation of Mr. Shepherd's depression, coitus limitation or sleep apnea because there is no Rule 26(a)(2) report from Dr. Katchen and his records and deposition testimony fail to provide any underlying methodology in an effort to demonstrate causation. *See Happel v. Walmart Stores,*

*Inc.*, 602 F.3d 820, 825-26 (7th Cir. 2010). It is the party proffering expert testimony that bears the burden of compliance with Rule 26(a)(2) and the consequence of non-compliance is "exclusion of an expert's testimony .... *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009).

> 6.   Plaintiff Should Be Barred From Introducing A Life Expectancy Table To Support Damages As They Are Not Providing An Expert With The Medical Background Necessary To Testify In That Area

To the extent that the EEOC intends on introducing a life expectancy table from which they will extrapolate how long into the future John Shepherd will suffer pain or limitations, such evidence would need to be established by expert opinion testimony. In this matter, the need for expert medical testimony is all the more compelling as it is not at all clear how Mr. Shepherd's alleged neurological and other disorders may otherwise diminish his life expectancy. Such information would certainly not be as self-evident or apparent as to obviate the need for expert testimony.

The Seventh Circuit has held that expert testimony is required to lay a foundation for how certain factors will impact a Plaintiff's life expectancy. *See Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir. 1994)(Refusing to allow admission of evidence that substance abuse would diminish life expectancy absent proper expert testimony), *citing Meller v. Heil Co.*, 745 F.2d 1297, 1303 (10th Cir. 1984); *see also Envoy v. CRST Van Expedited, Inc.*, 430 F.Supp.2d 775, 781-782 (N.D. Ill. 2006)(Life expectancy testimony requires medical expertise, thus an economist was properly barred from testifying to such matters pursuant to Rule 702 and *Daubert*). Dr. Katchen offered no such life expectancy testimony during his deposition and he failed to provide a Rule 26(a)(2) report containing such opinions as noted above. For those reasons, the EEOC should be prohibited from providing life expectancy opinions in the trial of this matter.

**M.    Plaintiff Should Be Barred From Offering Evidence As To Any Prior And Pending Lawsuits And Claims And Occurences Of Any Kind**

Defendant moves to bar evidence of any and all lawsuits and claims of any kind involving AutoZone, as they are irrelevant and unfairly prejudicial. Fed. R. Evid. 401 and 403. Further, any arguable probative value would be substantially outweighed by its prejudicial effect. "Evidence is unfairly prejudicial if it will 'induce the jury to decide the case on an improper basis rather than on the evidence presented.'" *United States v. Miles*, 207 F.3d 988, 992 (7th Cir. 2000). As this Court has previously stated, evidence about unrelated lawsuits is inflammatory and likely to prejudice the jury against defendants. *Johnson v. PS Ill. Trust*, No. 03 C 6517, 2005 U.S. Dist. LEXIS 28069 (N. D. Ill. November 14, 2005). In *Johnson*, the Northern District Court granted defendant's motion to exclude reference to other lawsuits brought against PSI or its affiliates reasoning that facts involving other lawsuits are too far afield, irrelevant, and unduly prejudicial. *Id.* at 14. As in *Johnson*, evidence of any and all lawsuits and claims of any kind should be barred as they are irrelevant and unduly prejudicial to AutoZone in the instant matter. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Here, the risks posed by the introduction of the evidence significantly outweigh its probative worth. Accordingly, evidence of any and all lawsuits, claims and occurrences of any kind involving AutoZone should be barred.

**N.      Hearsay Conversations Between John Shepherd And Unidentified Illinois Department Of Employment Security Personnel Should Be Barred**

In his discovery deposition, John Shepherd testified about conversations he had with unidentified IDES personnel regarding their review of his application for unemployment benefits, their initial denial of said benefits, and subsequent approval following further investigation.    Specifically, Shepherd testified that during one such conversation, IDES personnel informed him that AutoZone's store managers provided IDES with false information. Shepherd testified further that IDES advised him that his application was subsequently approved based on IDES's determination that he was wrongfully discharged from AutoZone.    (*See* Shepherd's deposition taken on March 21, 2008, pages 179-180).    As such, his testimony as to these conversations should be barred as it is hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.    Fed. R. Evid. 801(c). Hearsay is generally inadmissible.    Fed. R. Evid. 802.    Based on the above, any comments, innuendo, or statements elicited by the plaintiff as to the alleged conversations between Shepherd and undisclosed IDES personnel should be barred as hearsay.

WHEREFORE, Defendant AutoZone, Inc. respectfully requests an Order, *in limine*, prohibiting the EEOC and its respective counsel, as well as all witnesses and other parties to this lawsuit, from eliciting testimony concerning, introducing evidence, alluding to and/or making any argument in the presence of the jury regarding the subject matter outlined and discussed above in sub-paragraphs A-N, and further barring mention that this motion has been filed and argued.

By:     /s/ Joseph F. Spitzzeri
        Attorneys AutoZone, Inc.
        Joseph F. Spitzzeri
        Christopher J. Carlos
        JOHNSON & BELL, LTD.
        33 W. Monroe Street, #2700
        Chicago, Illinois  60603
        312/372-0770