IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07 C 1154 |
| v. | ) ) | Magistrate Judge Gorman |
| AUTOZONE, INC. | ) ) | |
| Defendant. | ) ) ) | |

**[PROPOSED] <u>PRE-TRIAL ORDER</u>**

This matter having come before the Court at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1; and Aaron DeCamp, Gregory Gochanour and Justin Mulaire having appeared as counsel for the plaintiff; and Joseph F. Spitzzeri and Christopher J. Carlos having appeared as counsel for the defendant; the following action was taken:

**I.  <u>NATURE OF ACTION AND JURISDICTION</u>**

This is an action under Titles I and V of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., to correct unlawful employment practices on the basis of failure to provide reasonable accommodations, and to provide appropriate relief to John P. Shepherd III ("Shepherd"), a qualified individual with a disability, back and neck impairments, who was adversely affected by such practices.

The jurisdiction of this Court is not disputed.

## II. JOINT STATEMENT

### A. JURISDICTION

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and is further authorized by Title V of the ADA, 42 U.S.C. § 12203(c), which incorporates by reference the enforcement remedies and procedures available under Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

### B. UNCONTESTED ISSUES OF FACT

The parties stipulate to the truth of the following facts, but do not stipulate to the admissibility of any stipulation or to the propriety of presenting any particular stipulation to the jury. The parties reserve the right to offer previous stipulations of fact into evidence if relevant, subject to all objections as to admissibility.

**I.    Preliminaries**

1) The Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), is an agency of the United States Government that is responsible for the enforcement of the Americans with Disabilities Act and is authorized to bring this action.

2) The Defendant, AutoZone, Inc. ("AutoZone"), is a Delaware corporation and at all relevant times was a corporation doing business in the Central District of Illinois.

3) Defendant AutoZone has employed more than five hundred (500) employees at all times from 2002 to the present.

4) At all relevant times, AutoZone was an employer within the meaning of the Americans

with Disabilities Act.

5) At all relevant times, John Shepherd was an employee of AutoZone within the meaning of the Americans with Disabilities Act.

6) All conditions precedent to the filing of this suit have been fulfilled.

## II. AutoZone

7) AutoZone operates a number of retail stores nationwide that sell auto parts and supplies.

8) Sales clerks at AutoZone's stores are sometimes known informally as "red shirts."

9) Sales clerks at AutoZone are not management employees.

10) Management employees at AutoZone stores typically include several Parts Sales Managers and a Store Manager as employees. However, depending on the size of the store, not all employees will be on duty at the same time.

11) The Macomb, Illinois AutoZone Store No. 2617 typically has two employees working at a given time throughout the day, one Part Sales Manager and one Sales Clerk.

12) The top manager at the store level at an AutoZone store is the Store Manager. However, a Part Sales Manager is the top manager at the store level when a store manager is not present.

13) The Parts Sales Managers' immediate supervisor is the Store Manager.

14) The Store Manager's immediate supervisor is a District Manager

15) District Managers at AutoZone oversee several stores in a geographic region.

16) Management level employees at AutoZone, including Part Sales Managers, had the authority to delegate any assigned tasks to employees below them in rank.

## III. John Shepherd & His Employment History at AutoZone

17) John Shepherd was initially hired by AutoZone in April 1998 as a sales clerk in

AutoZone's Fort Madison, Iowa store.

18) Steven Smith was the District Manager who oversaw the Fort Madison, Iowa store during the time John Shepherd worked there.

19) In 1999, about a year after John Shepherd was hired, he was promoted to the position of Parts Sales Manager by District Manager Steven Smith, at the request of the Store Manager.

20) In 2000, John Shepherd transferred to AutoZone's Macomb, Illinois Store, No. 2617.

21) When he transferred to the Macomb store, John Shepherd remained a Parts Sales Manager.

22) During his employment at the Macomb store, John Shepherd received "corrective action reviews" on March 8, 2002; June 6, 2002; September 23, 2002; October 21, 2002; February 10, 2003; May 13, 2003; and July 24, 2003.

23) During the time John Shepherd was employed at the Macomb store, other employees and management received "corrective action reviews" as well; Shepherd was not the only one.

24) Terry Wilmot received "corrective action reviews" on March 7, 2002; June 3, 2002; July 9, 2002; February 2, 2003; July 3, 2003 and May 11, 2004.

**IV.　Other People at the Macomb Store**

25) At the time John Shepherd transferred to the Macomb store in 2000, Terry Wilmot was the Store Manager of that store.

26) Sometime in 2000 or 2001, after John Shepherd's transfer, the Macomb store was assigned to Steven Smith's region and so Smith became that store's District Manager.

27) Steven Smith remained the District Manager of the Macomb store for the rest of John

Shepherd's employment at AutoZone.

28) In July 2002, Steven Thompson replaced Terry Wilmot as Store Manager at the Macomb store.

29) In July 2002, Terry Wilmot became a Parts Sales Manager at the Macomb store.

30) As an employee for AutoZone, Steven Smith had diversity and ADA training.

31) As an employee for AutoZone, Steven Thompson had diversity and ADA training.

32) As an employee for AutoZone, Jacqueline Moore had diversity and ADA training.

33) As an employee for AutoZone, Teresa James had diversity and ADA training.

34) Jacqueline Moore is no longer an employee of AutoZone and resides outside of the state of Illinois.

35) Steven Smith retired from AutoZone and currently resides in the state of Iowa.

36) Steven Thompson moved to Alabama and is no longer an employee of AutoZone.

**V.     Parts Sales Manager Duties**

37) Parts Sales Manager was a sales and customer service position.

38) In addition to sales and customer service work, sales clerks and Parts Sales Managers at the Macomb store were also assigned a variety of other daily tasks, some of which were "closing tasks" to be performed at the end of the day.

39) Dust Mopping and Wet Mopping and buffing floors were among the daily tasks.

40) An employee's daily tasks changed from day-to-day and were assigned by a computer program.

41) The manager on duty had the authority to change the daily task assignments generated by the computer and had the authority to delegate duties to sales clerks.

42) As the Parts Sales Manager working the evening shift, Shepherd would be the highest

ranking person in the store during that shift.

43) Parts Sales Managers had the authority to delegate work duties to sales clerks, including daily tasks — unless the daily task involved handling money from the cash registers.

## VI.     John Shepherd's Impairments

44) John Shepherd sustained an injury to his back in 1996 resulting from a workplace accident that occurred while he was working at Zeta Consumer Products.

45) Since 1996, John Shepherd has suffered from impairments to the trapezius and rhomboid muscles of the upper left side of his back, degenerative disc disease of the cervical vertebrae and/or disc herniation of the cervical vertebrae.

46) The parties agree that the stipulations identified as Stipulation Nos. 59-66 in the parties' July 2, 2009 Stipulation (ECF Doc. 119) will not be presented to the jury at this trial.

47) During the last year that John Shepherd was working at the Macomb store, he experienced flare-ups of his neck and back impairments multiple times per week during which he would not be able to put on his own pants, his own shoes, brush his hair, brush his teeth, wash his own hair, back or feet, sweep or vacuum around the house, do the laundry, do the dishes, rake leaves, shovel snow, or mow the lawn.

48) John Shepherd's neck and back impairments substantially limited his ability to care for himself after September 12, 2003.

49) When John Shepherd experienced flare-ups of his neck and back impairments, he required his wife's assistance with washing his hair, washing his back, washing his feet, dressing himself, putting on his shoes, and brushing his hair.

50) Susan Shepherd assisted John Shepherd with washing his hair, washing his back, washing his feet, dressing himself, putting on his shoes, and brushing his hair while he was

working at the Macomb store.

51) John Shepherd provided AutoZone a copy of a March 14, 2002 decision of the Illinois Industrial Commission which described Shepherd's back and neck impairments and resulting physical restrictions.

### VII. Shepherd's EEOC Charges

52) On December 30, 2002, John Shepherd filed a Charge of Discrimination with the EEOC alleging that AutoZone was discriminating against him on the basis of disability.

53) John Shepherd filed another EEOC Charge on October 8, 2003, which led to the claim that is the subject of the trial set to begin June 1, 2011.

### VIII. Events of September 12, 2003

54) On September 12, 2003, John Shepherd was performing a mopping task at the Macomb store.

55) While wringing out a mop on September 12, 2003, Shepherd's back condition flared up and he felt a sharp pain in his back.

56) Because of the flare up of his back condition on September 12, 2003, Shepherd was sent home by AutoZone employees and did not return to work. Dr. Katchen placed Mr. Shepherd on medical leave of absence on September 15, 2003.

### C. CONTESTED ISSUES OF FACT

1) Whether John Shepherd was qualified to perform the essential functions of the Parts Sales Manager position during the period March 2003 to September 12, 2003.

2) Whether John Shepherd's neck and back impairments substantially limited his ability to care for himself during the period March 2003 to September 12, 2003.

3) Whether AutoZone was aware of Shepherd's physical limitations during the period

March 2003 to September 12, 2003.

4) Whether it became apparent to AutoZone during or prior to the period March 2003 to September 12, 2003, either as a result of a request by Shepherd or otherwise, that Shepherd needed an accommodation.

5) Whether, during the period March 2003 to September 12, 2003, AutoZone required John Shepherd to perform tasks inconsistent with his physical limitations, primarily mopping and buffing tasks.

6) If AutoZone failed to provide a reasonable accommodation to Shepherd during the period March 2003 to September 12, 2003, whether Shepherd experienced pain and suffering as a result, and if so what amount of compensatory damages would fairly compensate him for pain and suffering resulting from that failure to accommodate him. .

7) If AutoZone failed to provide a reasonable accommodation to Shepherd during the period March 2003 to September 12, 2003, what award of punitive damages, if any, would be appropriate for that failure to accommodate him.

8) If AutoZone failed to provide a reasonable accommodation to Shepherd during the period March 2003 to September 12, 2003, whether Shepherd lost wages as a result.

### D. CONTESTED ISSUES OF LAW

1) Whether AutoZone violated the Americans with Disabilities Act by failing to provide Shepherd a reasonable accommodation during the period March 2003 to September 12, 2003.

### E. JURY DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint, other than those pertaining to backpay and prejudgment interest and the determination of injunctive relief.

## III. PLAINTIFF'S STATEMENT

The EEOC seeks backpay for the period September 13, 2003 to the present. The parties have stipulated that if AutoZone is found liable for the pending reasonable accommodation claim, and if AutoZone is found to be liable for backpay in connection with that claim, the amount of backpay for which AutoZone will be liable is stipulated to be $115,000. The EEOC also seeks compensatory damages for pain and suffering experienced by Shepherd in during the period March 2003 to December 31, 2003; punitive damages; and prejudgment interest. Although a jury may not be informed of the limitations on compensatory and punitive damages provided by statute, the EEOC understands that the total amount of compensatory and punitive damages entered as a judgment may not exceed $300,000. See 42 U.S.C. § 1981a(b)(3), (c)(2).

The EEOC also seeks injunctive relief, including: (i) a permanent injunction enjoining AutoZone, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice that violates Titles I and V of the ADA, including failing to reasonably accommodate disabled employees; (ii) a permanent injunction requiring AutoZone to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices; and (iii) such further relief as the Court

deems necessary and proper, including, without limitation, an order requiring AutoZone to provide its managers and human resources staff with training on the ADA, post a notice advising employees of the outcome of this action, and keep records of requests for reasonable accommodation and make periodic reports to the EEOC regarding the handling of such requests.

The EEOC also seeks an award of its costs in this action.

## IV.  EXHIBITS ATTACHED

The following are attached as exhibits to this order and are made a part hereof:

A. Stipulation of Uncontested Facts and Issues of Law (signed by both parties)

B. Plaintiff's Witness List

C. Plaintiff's Designations of Deposition Testimony

D. Defendant's Objections to Plaintiff's Designations of Deposition Testimony

E. Defendant's Witness List

F. Defendant's Designations of Deposition Testimony

G. Plaintiff's Objections to Plaintiff's Designations of Deposition Testimony

H. Plaintiff's Exhibit List

I. Defendant's Exhibit List

J. Jointly Proposed Jury Instructions

K. Plaintiff's Proposed Jury Instructions

L. Defendant's Proposed Jury Instructions

M. Plaintiff's Proposed Verdict Form

N. Defendant's Proposed Verdict Form

# GENERAL ADDITIONAL

The following additional action was taken: AutoZone's Answer contained seven items denominated as affirmative defenses, the second, fourth, and fifth of which are no longer part of the Answer: The second and fourth such items were stricken by order dated September 25, 2007 (ECF Document No. 17), and AutoZone requested leave to withdraw the fifth such item on February 24, 2009 (ECF Document No. 70), which leave was granted by text order dated February 25, 2009.

## IT IS UNDERSTOOD BY THE PARTIES THAT

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed and served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any party.

It is mutually estimated that the length of trial will not exceed 3 full days. The case will be listed on the trial calendar to be tried when reached.

This pre-trial order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice. Such modification may be made either on motion of counsel for any party or on the Court's own motion.

Any additional proposed jury instructions shall be submitted to the Court within five days before the commencement of the trial, but there is reserved to counsel for the respective parties the right to submit supplemental proposals for instructions during the course of the trial or at the conclusion of the evidence on matters that could not reasonably have been anticipated.

IT IS SO ORDERED.

_____

John A. Gorman
United States Magistrate Judge


APPROVED AS TO FORM AND SUBSTANCE:


  s/ Justin Mulaire                                  Date:  5/2/11
Justin Mulaire
Attorney for Plaintiff
U.S. Equal Employment Opportunity Commission
131 M St. NE
Washington, DC  20507
202-663-4741

Aaron R. DeCamp
Gregory Gochanour
Attorneys for Plaintiff
U.S. Equal Employment Opportunity Commission
500 W. Madison St., Ste. 2000
Chicago, IL  60661


  s/ Joseph F. Spitzzeri                             Date:  5/2/11
Joseph F. Spitzzeri
Christopher J. Carlos
Attorneys for Defendant
Johnson & Bell, Ltd.
33 W. Monroe St., Ste. 2700
Chicago, IL  60603
312-372-0770