E-FILED
Tuesday, 08 November, 2011  11:40:15 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

United States Equal Employment )
Opportunity Commission, )
                   Plaintiff )
        )
       v. )                       Case No. 07-1154
        )
AutoZone, Inc., )
                Defendant )

## ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are the parties' post-trial motions, as follows: Defendants Motion for judgment as a matter of law, for a new trial or to amend judgment (#238); Plaintiff's motion for permanent injunction (#240); Plaintiff's amended motion for permanent injunction (#241); Plaintiff's motion to vacate taxation of costs (#234); and Plaintiff's motion for prejudgment interest (#242).

## BACKGROUND

On June 19, 2009, this Court granted in part and denied in part AutoZone's motion for summary judgment. A jury trial was held as to the part of the case that had survived summary judgment, and the jury returned a verdict in favor of AutoZone. Judgment was entered (#167) in favor of AutoZone, and costs were taxed to EEOC. EEOC appealed the summary judgment ruling only, and the Seventh Circuit reversed.

A second trial was held as to the reversed portion of the case on June 2 and June 3, 2011. The jury returned a verdict in favor of the EEOC, awarding $100,000 in compensatory damages and

$500,000 in punitive damages. The pending motions relate to the verdict in this second trial and to the judgment entered thereon.

### *AutoZone'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL OR, IN THE ALTERNATIVE, TO ALTER OR AMEND JUDGMENT*

In order to prove its ADA failure to accommodate claim, EEOC had to prove that AutoZone's employee, John P. Shepherd, was a qualified individual with a disability; AutoZone was aware of his disability; and AutoZone failed to reasonably accommodate his disability. Bragdon v. Abbott, 524 U.S. 624 (1998); EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). In this motion, AutoZone asserts that the evidence was insufficient as to two of those elements, namely that Shepherd was qualified and that AutoZone failed to accommodate his disability.

"Once a jury has spoken, we are obliged to construe the facts in favor of the parties who prevailed under the verdict." Tart v. Illinois Power Co., 366 F.3d 461, 464 (7th Cir. 2004). A party seeking to set aside a jury verdict "bears a heavy burden" and must show that "no rational jury could have brought in" the verdict. Maher v. City of Chicago, 547 F.3d 817, 824 (7th Cir. 2008).

> When entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, the court must draw all inferences in favor of the nonmoving party...We may not make credibility determinations or reweigh the evidence. We must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. We are particularly careful in employment discrimination cases to avoid supplanting one view of the credibility or weight of the evidence for that of the jury. This is because employment discrimination cases often involve sensitive and difficult issues of fact, and plaintiffs often have only circumstantial evidence on which to rely.

Id. at 472. See also Gower v. Vercler, 377 F.3d 661, 666 (7th Cir. 2004)(when reviewing jury verdict, court cannot substitute jury's finding as to credibility and weight of evidence.)

With respect to whether Shepherd was qualified to perform the essential functions of his job

during the relevant time period, EEOC presented evidence that Shepherd had been promoted during that time period and had received a number of awards from AutoZone for excellent customer service, safety, loss prevention and the like. Shepherd's sales statistics exceeded those of other employees in his position, and his managers, including those called as adverse witnesses in the case, all testified that he was well above average in that respect.

As much as 80% of Shepherd's job was sales-related. The other 20% of his job included the tasks that created problems for him, such as stocking shelves and mopping floors. Shepherd testified that he was able to devise his own methods for lifting and carrying. He was not, however, able to devise a work-around for mopping floors, which is the focus of AutoZone's contention that he was not qualified.

AutoZone's corporate representative testified that mopping floors was an essential function of the job of anyone who worked in the store, including the parts sales manager. AutoZone asserts that this testimony was undisputed and must therefore be accepted at face value.

That is incorrect. This evidence came from a corporate representative, and a corporate representative is hardly a disinterested witness. The jury was entitled to view her testimony with an eye for bias. In addition, she had been hired by the company three years after Shepherd had left AutoZone employment, so her knowledge of in-store policy and practice during the time period in question was certainly not based on her own knowledge, yet another reason the jury was entitled to discredit her testimony.

The question boils down to what, if any, other evidence there was that mopping floors was an essential function of the position of parts sales manager. It is true that the employer's judgment is one factor that a jury may consider in deciding whether a function is essential. The employer's

judgment, however, is not dispositive, and as demonstrated above, the jury in this case rejected that judgment.

EEOC introduced evidence - uncontradicted (and in some cases conceded) by AutoZone - that mopping was a chore that could be delegated by the parts sales manager to other employees. AutoZone also agreed that there were always two employees in the store at any given time. These two facts certainly cut against the conclusion that mopping was an essential function of Shepherd's job. As the Seventh Circuit noted in DePaoli v. Abbott Laboratories, 140 F.3d 668, 674 (7th Cir. 1998), it is proper to consider whether the employer actually requires all employees in a particular position to perform the allegedly essential function. AutoZone may well have thought it essential that the floors be mopped, but that is not the same thing as saying that it was essential that John Shepherd be the one to do the mopping.

The evidence also showed that the amount of time spent mopping was marginal, perhaps an hour a week. In some situations, that fact might not be dispositive, such as where a particular chore can only be completed by an employee with very specific skills. Obviously, that is not the case with a routine and unskilled task such as mopping floors.

AutoZone also argues that the limitations to which Shepherd testified with respect to certain personal care tasks requires the inference that Shepherd could not perform the essential functions of his job. But those arguments were made to the jury, which was entitled to reject them. Moreover, this argument apparently[1] goes only to mopping - AutoZone argues that the movements of the personal care tasks were "similar" to those of essential functions. It has already been demonstrated

---

[1]AutoZone does not clearly state which essential function is pertinent to this argument. There is nothing in the record about some function that was comparable in movement to these personal care tasks other than mopping.

above that mopping was not an essential function.

Federal regulations list other factors that may determine whether a function is essential or fundamental to a particular position. 29 C.F.R. § 1630.2(n)(2) and (3). Other than testimony about the employer's judgment, AutoZone presented no evidence relevant to any of the other factors. In light of the reasons that the jury might reasonably have discounted AutoZone's corporate representative's testimony, and in light of the evidence EEOC put on with respect to the specifics of the chore of mopping, it was not unreasonable for the jury to have concluded that mopping floors was not an essential function of Shepherd's job. With the chore of mopping set to one side as non-essential, the evidence was sufficient to support the conclusion that Shepherd was qualified to perform the essential functions of his job.

AutoZone also claims that EEOC should be estopped from litigating Shepherd's qualifications, because the jury in the first trial found that Shepherd was not qualified to perform the essential functions of his job. But the first trial dealt with a different - and later - time period. The jury's finding for the later period has nothing to do with whether he was qualified during the earlier period. These two issues are entirely different. In order to claim estoppel, the party asserting it must show that the issues are the same. Washington Group Intern., Inc. v. Bell, Boyd & Lloyd LLC, 383 F.3d 633, 636 (7th Cir. 2004). AutoZone has failed to make this showing.

AutoZone next challenges the jury's finding that it failed to accommodate Shepherd's disability. According to AutoZone, there is evidence in the record that AutoZone did take steps to accommodate Shepherd's disability. That argument is beside the point. AutoZone is obligated to show that there is *insufficient* evidence to support the jury's finding, not that there is *some* evidence contrary to the jury's conclusion. Tart, 366 F.3d. at 472.

EEOC put on evidence - testimony by Shepherd and Wilmot - about Shepherd's superiors' requirement that he mop floors during this period, and about those superiors' directions to store managers to enforce that requirement. Shepherd and Wilmot also testified that Shepherd was told he would lose his job if he refused. The testimony of Shepherd and Wilmot is directly contrary to the testimony of AutoZone's witness, who testified that no such directions were given. The jury made its credibility determination. It is not for this Court to alter that determination.

Next, EEOC challenges the jury's award of punitive damages, arguing first that there was no evidence that the managers acted with the knowledge that their actions might violate federal law. Kolstad v. American Dental Ass'n, 527 U.S. 526, 536 (1999). This type of knowledge may be shown by evidence that managerial employees involved in the decision knew of or were familiar with anti-discrimination laws and employer polices for implementing those laws. Bruso v. United Airlines, 239 F.3d 848, 858 (7th Cir. 2001).

In the final pretrial order that governed the trial of this case, AutoZone stipulated that three of the relevant managers - Smith, Thompson, and Moore - had received training about the ADA. Each of them testified that they knew the ADA required that reasonable accommodations be made for employees with disabilities. In other words, there was evidence sufficient to submit the question of punitive damages to the jury, and there was evidence that the managers had the requisite knowledge to support an award of punitive damages.

AutoZone also asserts that the jury was required to accept its defense that it had made good faith efforts to implement an anti-discrimination policy, a defense that also would have precluded an award of punitive damages. For several reasons, that argument is rejected. First, no written policy was introduced into evidence, and it would not have been unreasonable for the jury to have

-6-

concluded that if this defense were being seriously asserted, the policy would be in writing and introduced into evidence.

Even if the existence of a policy is assumed, however, more is required to succeed on this defense. There must also be evidence of the employer's efforts to enforce the policy. Bruso, 239 F.3d at 859; Cooke v. Stefani Mgt. Svcs., Inc., 250 F.3d 564, 568 (7th Cir. 2001). Here there was evidence that could have led the jury to conclude that AutoZone did not enforce any such policy: Smith and others higher up in the management chain were well aware of Shepherd's disability and of his and his doctor's requests to be relieved from mopping floors. Nonetheless, the jury obviously credited the testimony that Shepherd was still required by AutoZone management to mop floors and discredited the testimony contradicting Shepherd. The jury was not obligated to find enforcement under such circumstances. See, e.g., Cadena v. Pacesetter Corp., 224 F.3d 1203, 1210 (10th Cir. 2000); Ogden v. Wax Works, Inc., 214 F.3d 999, 1010 (8th Cir. 2000), cited with approval in Bruso, 239 F.3d at 858 n.7.

There was sufficient evidence to find reasonable the jury's rejection of AutoZone's defense of good faith implementation and enforcement of an anti-discrimination policy. There is sufficient evidence to support the jury's finding that upper management had knowledge of their legal obligations under the ADA. Hence, an award of punitive damages was proper.

There being no basis for entering judgment as a matter of law, the motion for that relief is denied. For the same reasons, the motion for a new trial based on the Court's assessment of the general weight of the evidence is also denied.

AutoZone also moves for a new trial on a different ground, based on what it characterizes as this Court's improper treatment of Shepherd's treating physician as an expert witness. This issue

-7-

was raised - and rejected - previously. See Order entered May 10, 2011 (Doc. #215). Nothing in AutoZone's motion persuades me that the Order was wrong the first time. This argument is therefore rejected here for the same reasons as were stated in that Order.

AutoZone next asserts that it is entitled to reduction of the amount of the verdict - $100,000 in compensatory damages and $500,000 in punitive damages. This issue is reviewed in the light most favorable to the jury's verdict. <u>Gorlikowski v. Tolbert</u>, 52 F.3d 1439, 1446 (7th Cir. 1995).

AutoZone presents a two-part argument, seeking reduction of both compensatory and punitive damages, first asserting that evidence does not support the amounts awarded by the jury, and second arguing that the judgment amounts exceed the statutory cap of $300,000.

Section 1981a provides in pertinent part that the sum of compensatory damages[2] and punitive damages for an employer the size of AutoZone[3] "shall not exceed ... $300,000." The statute does not prescribe a method for reducing damages in excess of this amount. It is apparent that the award of compensatory and punitive damages must be reduced at least to $300,000. The questions are whether the reduction should be taken from compensatory damages, punitive damages or both, and by how much the verdict should be reduced.

Reduction of the verdict amount, or *remittitur*, is an option that is offered to a plaintiff as an alternative to a new trial on damages. See, <u>Hetzel v. Prince William County, VA</u>, 523 U.S. 208

---

[2]Compensatory damages include, according to the statute, damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages. 42 U.S.C. 1981a(b)(3). In this case, the time frame has a definite end-date; while in some cases that may not preclude future losses, in this case the jury's verdict in the first trial - which found in favor of AutoZone for the period following that end date - effectively eliminates consideration of future losses.

[3]The ADA distinguishes between large and small employers, based on number of employees. AutoZone falls into the category of large employers.

(1998). *Remittitur* is discussed in a number of cases. See, <u>Frazier v. Norfolk & Western Ry. Co.</u>, 996 F.2d 922, 925 (7th Cir. 1993); <u>Joan W. v. City of Chicago</u>, 771 F.2d 1020, 1023 (7th Cir. 1985);<u>Levka v. Chicago</u>, 748 F.2d 421, 425 (7th Cir. 1984); <u>Abernathy v. Superior Hardwoods, Inc.</u>, 704 F.2d 963, 971 (7th Cir. 1983); and <u>Phillips v. Hunter Trails Community Assoc.</u>, 685 F.2d 184, 190 (7th Cir. 1982).

These cases explain that the test for *remittitur* is "severe," and *remittitur* is proper only if the jury verdict is "monstrously excessive" or if there is no "rational connection" between evidence of damages and the verdict. In addition, if the case is "one of a series of similar cases, the verdict must be comparable to the other verdicts. <u>Thompson v. Memorial Hosp. of Carbondale</u>, 625 F.3d 394, 408 (7th Cir. 2010); <u>Joan W. v. City of Chicago</u>, 771 F.2d 1020, 1023 (7th Cir. 1985). Because there is no prescribed method for reducing the verdict, the reduction is guided by discretion.

 It would be hard to conclude that an award of $100,000 is "monstrously excessive" or not "rationally connected" to the $100,000 compensatory damages verdict that was entered. The jury heard a great deal of testimony about Shepherd's near daily pain for 6 months and about the need for physical therapy and other medical attention, including but not limited to depression that his doctor noted was related to his being off work.

AutoZone also argues that the award of $100,000 is out of line with similar cases. Although other awards provide a "reference point" for assessing reasonableness, they do not establish a range or a point at which awards are necessarily unreasonably excessive. <u>Deloughery v. City of Chicago</u>, 422 F.3d 611, 621 (7th Cir. 2005). The analysis is "highly fact specific" and rarely will a comparison, standing alone, result in *remittitur*. <u>Id.</u> Where the harm for which compensation is sought includes a physical element, as it does here, higher compensatory damages have usually been sustained. See,

e.g., <u>Thompson</u>, 625 F.3d at 410.

AutoZone cites two cases in support of its position that this award is out of line with other similar cases. In <u>Avitia v. Metropolitan Club of Chicago, Inc.</u>, 49 F.3d 1219 (7th Cir. 1995), a $21,000 award was remitted to $10,500. That case is not comparable to this one. The plaintiff presented no evidence of physical injury or pain; the evidence was limited to plaintiff's own testimony about how upset he was when he lost his job. Moreover, within 3 months, he had found new and comparable employment.

The same is true of <u>Merriweather v. Family Dollar Stores of Indiana Inc.</u>, 103 F.3d 576 (7th Cir. 1996), where there was no evidence of physical injury. Moreover, in that case, there was evidence of stressful and emotional events that had nothing to do with the plaintiff's employment, such as the death of her father.

Other cases demonstrate that six figure verdicts for compensatory damages fall within the range of reasonable. See, <u>Farfaras v. Citizens Bank and Trust of Chicago</u>, 433 F.3d 558, 566 (7th Cir. 2006)(affirming $200,000 verdict, $100,000 for pain and suffering and $100,0000 for loss of dignity, humiliation and emotional distress, without extensive psychological or medical testimony); <u>Deloughery v. City of Chicago</u>, 422 F.3d 611, 619-21 (7th Cir. 2005)($175,000 for emotional distress in failure to promote case); <u>Naeem v. McKesson Drug Co.</u>, 444 F.3d 593, 612 (7th Cir. 2006)($240,000 for emotional distress in discrimination case); <u>Harvey v. Office of Banks & Real Estate</u>, 377 F.3d 698, 714 (7th Cir. 2004)(range of $50,000 to $150,000 reasonable in discrimination case); <u>Lampley v. Onyx Acceptance Corp.</u>, 340 F.3d 478, 484 (7th Cir. 2003)($75,000 for emotional pain and suffering in discrimination/retaliation case). See also, <u>O'Sullivan v. City of Chicago</u> 474 F.Supp. 2d 971, 988-89 (N.D.Ill.2007)(citing cases upholding six-figure compensatory damages

-10-

awards in denying *remittitur* of verdict of $250,000 compensatory damages where no medical evidence was presented).

The evidence of compensatory damages in the case before this Court was not overwhelming. When viewed in the light most favorable to EEOC and Shepherd, however, the evidence is sufficient to sustain the jury's verdict. It included Shepherd's graphic testimony about his own pain and symptoms that resulted from mopping, as well as some measure of corroboration from his wife and consistent, helpful testimony and records from his physician. I conclude that *remittitur* of the compensatory damages award is not justified in this case. There is sufficient evidence in the record to sustain the jury's determination of the value of Shepherd's physical, emotional and mental pain.

Defendant also moves for *remittitur* of the punitive damages award, asserting that the award of $500,000 exceeds procedural and substantive limits of the Due Process Clause of the Fifth Amendment. See, BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996)). As noted above, the suggestion that this award be vacated in its entirety is rejected; there was evidence to support some award for punitive damages.

It is clear, as noted above, that punitive damages must be reduced at least sufficiently to bring the total verdict within the $300,000 statutory cap, namely to $200,000. The question is whether punitive damages in the amount of $200,000 is supportable or whether that amount should be further reduced, as Defendant asserts.

While "it is inevitable that the specific amount of punitive damages awarded whether by a judge or by a jury will be arbitrary ... [t]he proper judicial function is to police a range, not a point." Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 678 (7th Cir.2003). In determining whether an award of punitive damages must be remitted, three general factors are considered: (1) the degree

-11-

of reprehensibility of the misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and those imposed in comparable cases. Id. at 575; see also State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 4189 (2003); Kunz v. DeFelice, 538 F.3d 667, 678 (7th Cir. 2008). The most important factor is the reprehensibility of the defendant's conduct. BMW, 517 U.S. at 575. In the case before this Court, the conduct of the Defendant's managerial employees at the highest level was clearly an intentional violation of the ADA. The evidence showed that these employees knew of Shepherd's back problems, knew that he was under a physician's care for those problems, and knew that the problems were exacerbated by mopping. Despite that knowledge, those managers insisted for no good reason at all that Shepherd continue to mop. They knew of but chose to ignore their obligations under the ADA to accommodate Shepherd's disability. The requested accommodation was a very simple accommodation: assign the mundane task of mopping to some employee other than Shepherd. They chose to threaten Shepherd with his job - and Wilmot with his - if he declined to mop or assigned the task to anyone else. Given this total and knowing disregard for the underlying purpose of the ADA, this conduct was reprehensible.

The original verdict included punitive damages five times the amount of compensatory damages. The Supreme Court has consistently rejected efforts to draw the line between constitutionally permissible and impermissible awards by simple mathematical formula; at the same time, however, the Supreme Court has stated that "few awards" exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process. Exxon Shipping Co. v. Baker, 554 U.S. 471, 501 (2008). There is nothing inherently unconstitutional about the ratio in this case.

A comparison of the award of punitive damages in this case and awards in other similar cases

reveals that the award is not on its face excessive, nor is it out of line with the compensatory damages. After reducing the punitive damages award to $200,000 in order to keep the verdict under the statutory cap, punitive damages are two times the amount of compensatory damages. That multiplier is neither unreasonable nor unconstitutional.

Defendant relies in part on <u>Gile v. United Airlines</u>, 213 F.3d 365 (7th Cir. 2000), where the Court reversed an award of punitive damages. The Court found that the decision-making management employee had believed in good faith that transferring the plaintiff to another shift would not have accommodated his disability. While this was a mistake, it did not represent the culpability required to support punitive damages. It is not, said the court, simply the egregiousness of the misconduct; it is rather the culpable state of mind regarding whether a denial of accommodation violates federal law. <u>Id.</u> at 376. As discussed above, that culpable state of mind was present in this case, so <u>Gile</u> is of no assistance to AutoZone.

The other cases cited as comparable by AutoZone are not helpful. One of the cases involved a verdict in which no punitive damages were awarded. That part of the verdict was not being appealed, and there was no discussion that proves helpful. <u>Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.</u>, 338 F. 3d 736, 739 (7th Cir. 2003).

In <u>Lampley Learning Curve Toys v. Onyx Acceptance Corp</u>, 340 F.3d 478, 485 (7th Cir. 2003), the compensatory damages of $76,000 and punitive damages award of $270,000 were upheld. The punitive damages were found reasonable based on the showing that the employer's upper management knew of Plaintiff's EEOC charge and decided that they had illegally terminated him, but nonetheless chose to discredit him rather than admit to facts surrounding his termination. While the evidence in the case now before this Court was slightly different, it still demonstrates the

-13-

culpable state of mind that is required. <u>Lampley</u> actually supports the verdict in this case.

In <u>EEOC v. AIC Sec. Investigations, Ltd.</u>, 55 F.3d 1276 (7th Cir. 1995), the $150,000 award of punitive damages was upheld. It was 3 times the amount of compensatory damages, not on its face unreasonable. The company against whom it was imposed was large, having over 300 employees, and a sizable award was found suitable to punish and deter a corporation of that size.

None of these cases go anywhere in demonstrating that the punitive damages award in this case must be remitted beyond the statutory cap. Accordingly, the motion is granted only to the extent that punitive damages must be remitted to bring the total verdict in line with the statutory cap. In all other respects, the motion for *remittitur* is denied. EEOC shall file a pleading within 14 days of the entry of this order stating whether it accepts or rejects the proposed *remittitur* of the punitive damage award to $200,000. Failure to file said pleading shall be deemed an acceptance of the *remittitur*.

Defendant also asks that the judgment be amended to eliminate the inclusion of back pay. Backpay is considered equitable relief under the ADA. 42 U.S.C. § 1981a(b)(2); 42 U.S.C. § 2000e-5(g); see also, <u>U.S. v. Apex Oil Co., Inc.</u>, 579 F.3d 734, 736 (7th Cir. 2009); <u>Pals v. Schepel Buick & GMC Truck, Inc.</u>, 220 F.3d 495, 500-501 (7th Cir. 2000); <u>West v. Gibson</u>, 527 U.S. 212, 217-18 (1999). Because back pay is a form of equitable relief, whether back pay is appropriate and the amount of any such award are questions for the court, not for the jury. <u>Pals</u>, 220 F.3d at 500-501. The ADA only caps compensatory damages, so the amount of back pay is not affected by the statutory cap of $300,000. <u>Pals</u>, 220 F.3d at 499.

The basis of Defendant's motion as to back pay is the parties' Stipulation (Doc.#196) as to lost wages, the meaning of which is disputed. The Judgment entered by the Court included the stipulated amount - $115,000 - and AutoZone argues that this amount should not have been included

at all in the Judgment until the court holds a hearing on the question whether AutoZone is liable for back pay at all. The only question unresolved is whether Shepherd experienced a wage loss as a result of AutoZone's failure to accommodate his disability.

The Stipulation provides in pertinent part:

2)      If AutoZone is found to be liable for the reasonable accommodation claim ... and *if AutoZone is found to be liable for an award of back pay* in connection with that claim, then
        (a) the parties hereby agree that the amount of back pay for which AutoZone shall be liable will be $115,000; and
        (b) the parties hereby waive any and all arguments that the amount of back pay for which AutoZone will be liable should be more or less than $115,000.

        This stipulation shall not be construed as a waiver of AutoZone's right to contest liability for the pending claim. *If AutoZone is found liable for the pending claim, this stipulation shall not be construed as a waiver of AutoZone's right to argue that the EEOC (and John Shepherd) are not entitled to an award of back pay in connection with the pending claim.* This stipulation shall not be construed as a waiver by the EEOC of any factual or legal contention in favor of finding AutoZone liable for the pending claim and liable for back pay, except as to the amount of such liability for back pay.

[emphasis added].

I find that this stipulation required a specific finding as to whether AutoZone was entitled to back pay before the Judgment reflected the stipulated amount. AutoZone suggests that its arguments on why Shepherd is not entitled to back pay "have not yet been scheduled or presented to the court."

In light of the verdict in this case and the stipulated facts contained in the final pretrial order, any argument that Shepherd is not entitled to back pay is without merit. The parties stipulated that Shepherd was injured while mopping on September 12, 2003 and that, because of that injury, he was sent home. He was placed on medical leave by his doctor and did not return to work during the period at issue in this case. The jury found that AutoZone was liable for requiring Shepherd to mop. Any argument that the specific wages lost during the period beginning on September 12 and going until the end of the year were attributable to some other cause would be without merit.

-15-

Accordingly, to the extent that AutoZone's motion asks the court to consider the specific question of back pay, it is granted. In all other respects, it is denied. The Judgment's inclusion of the stipulated amount - $115,000 - for back pay remains.

As stated above, the motion for judgment as a matter of law is denied; the motion for a new trial is denied, and the motion to alter or amend judgment is granted in part and denied in part.

### *PLAINTIFF'S MOTION TO VACATE TAXATION OF COSTS IN FIRST JUDGMENT*

The amended judgment in this case, entered on June 7, 2011 (Doc. #228) still reflects the verdict from the first trial, along with costs taxed in the amount of $13,863.16. In this motion, EEOC points out that, while AutoZone was clearly the prevailing party at the conclusion of the first trial - and was therefore entitled to its costs under Fed.R.Civ.P. 54(d) - the same can no longer be said, because EEOC has now prevailed on part of its claim and has obtained a significant judgment against AutoZone. EEOC therefore moves that the costs originally taxed against it be vacated.

Under Rule 54(d), a party prevails when it is awarded substantial relief, even if that party does not prevail on all of its claims. In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the Court articulated the standard for a finding of "prevailing party" as whether the party "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Similarly, in Slane v. Mariah Boats, Inc., 164 F.3d 1065, 1068 (7th Cir. 1999), the Seventh Circuit noted that "a determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided." Republic Tobacco Co. v. North Atlantic Trading Co., 481 F.3d 442, 446 (7th Cir. 2007), quoting 10 Wright Miller & Kane Federal Practice & Procedure §2667 (3d ed. 2006).

AutoZone argues, however, that EEOC has waived the right to challenge the prior

-16-

assessment of costs because it did not raise the issue on appeal. The case on which AutoZone relies is Dempsey v. JP Morgan Chase Bank, - F.3d -, Case No. 09-1151, 2009 WL1653870, June 15, 2009 (7th Cir.). That case does not support this argument. In Dempsey, the Seventh Circuit held that an issue could not be raised on a second *appeal* if it had not been raised during the first one. It does not govern what this Court can do on remand.

Moreover, Dempsey is inapposite for another reason. Dempsey dealt with an appeal of an award of attorney's fees that the district court had imposed because the plaintiff's case was found frivolous. On appeal, plaintiff argued only that his case was not frivolous; he did not appeal the amount of the fees or the method of calculating them. On remand, the district court recalculated the attorney's fees, reducing them. Plaintiff appealed again, challenging the amount of fees awarded. The Court of Appeals found that his strategy during the first appeal precluded him from raising during a second appeal the amount of fees, because that issue could have been raised and decided in the first appeal.

The logic of Dempsey does not hold when the issue is taxation of costs, rather than a substantive decision. There was no basis for EEOC to ask for reversal of the taxation of costs during its appeal because it had no basis to assert that AutoZone was not a prevailing party. It was only after the case was remanded and the second trial resulted in a verdict for the EEOC that this argument could be made. EEOC did not waive this argument, and this Court may revisit the issue of the costs taxed after the first trial.

AutoZone next argues that EEOC is not the prevailing party because it only prevailed on one of its five claims. In support of that argument, AutoZone cites Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633 (7th Cir. 1991). That case involved an insurance dispute that centered around the question whether certain underlying toxic-tort cases involved a single

-17-

occurrence or multiple occurrences within the meaning of the policy. The answer to that question determined whether P&G's deductible was $1 million or $10 million. The jury determined that there were multiple occurrences and that the deductible was therefore $10 million. The court found that, in that context, the approximate $50,000 P&G recovered under the policy was nominal and that P&G was not a prevailing party.

The complaint in this case asserted 5 claims: that AutoZone discriminated against Shepherd (by failing to reasonably accommodate his disability; by keeping him on involuntary leave; and by discharging him) and that AutoZone retaliated against him for asserting his ADA rights (by failing to reasonably accommodate his disability; by keeping him on involuntary leave; and by discharging him). The jury in the second trial found that AutoZone had failed to accommodate Shepherd's disability during the period between March and September of 2003. As to all other claims made in this case, AutoZone prevailed.

It is certainly true that EEOC prevailed on only one of its five claims, and were it not for one other crucial fact, that might be enough to give credence to AutoZone's comparison of this verdict to the one in Northbrook Excess. That crucial fact is the amount of damages awarded by the jury and the Court: $100,000 in compensatory damages, $500,000 in punitive damages, and $115,000 in back pay. Unlike Northbrook Excess, that simply cannot be characterized as a nominal or *de minimis* recovery (even after punitive damages are remitted).

In Texas State Teachers Association v. Garland Independent Sch. Dist., 489 U.S. 782 (1989), the Supreme Court considered the meaning of "prevailing party" in another context. The Garland Court stated that a plaintiff was prevailing if he had "succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." Certainly, by virtue of the sizable verdict, EEOC has done that.

-18-

AutoZone argues that, even if EEOC is considered the prevailing party, the relief it obtained was a "mixed outcome" which is not sufficient to support an award of costs under Rule 54(d). The case on which AutoZone relies - <u>Testa v. Village of Mundelein</u>, 89 F.3d 443, 447 (7th Cir. 1996) does not support this argument. In <u>Testa</u>, plaintiff brought a section 1983 Fourth Amendment claim for unlawful arrest and a state law claim for malicious prosecution. The jury found in favor of defendant on the arrest claim but awarded plaintiff $1,500.00 on the malicious prosecution claim. The trial court entered judgment and ordered parties to bear their own costs. On appeal, the Seventh Circuit upheld the award of costs, noting first the trial court's wide discretion in determining and awarding reasonable costs. Based on the "mixed outcome" that plaintiff had obtained, the Court of Appeals upheld the order that parties bear their own attorney's fees and costs.

To apply <u>Testa</u> as Defendants would have it applied would result in nullification of a long line of cases interpreting Rule 54(d) and the word "substantial" as meaning that the party has obtained some relief even if not all that was sought. For example, in the case cited by Defendants, <u>First Commodity Traders, Inc. v. Heinold Commodities, Inc.</u>, 766 F.2d 1007 (7th Cir. 1985), the Court found that plaintiff was not the prevailing party, not simply because he did not obtain relief as to 6 of his 7 claims but rather because the district court had dismissed those 6 claims. Moreover, the district court did not decline to award costs; it simply awarded fees and costs in proportion to the plaintiff's success, namely 6/7 of the fees and costs sought. See, <u>Slane v. Mariah Boats, Inc.</u>, 164 F.3d 1065, 1068 (7th Cir. 1999)., cert denied, 527 U.S. 1005 ("when one party gets substantial relief it 'prevails' even if it doesn't win on every claim."); <u>Gautreaux v. Chicago Housing Authority</u>, 491 F.3d 649, 659 (7th cir. 2007)(change in defendant's policy embodied in judicial orders was sufficient for finding that plaintiff was prevailing party, even though that was not the relief sought).

Several "mixed result" cases have recognized that in such cases the court's discretion with

respect to awarding costs is "especially broad." See, <u>Gavoni v. Dobbs House Inc.</u>, 164 F.3d 1071, 1075 (7th Cir. 1999); <u>Rexam Beverage Can Co. v. Bolger</u>, - F. Supp. 2d -, Case No. 06-2234, 2008 WL 5068824 *10, Nov. 25, 2008 (N.D.Ill.). In <u>Rexam</u>, the court awarded costs for defendant's expert witness, even though that witness's testimony was relevant on an issue as to which plaintiff was unsuccessful. In <u>EEOC v. Wal-Mart Stores, Inc.</u>, - F. Supp. 2d -, Case No. 99-106, 2000 WL 1162029, June 29, 2000 (S.D. Ill.), a harassment and retaliation case went to the jury. The verdict was in favor of defendant on the harassment claim and in favor of EEOC on the retaliation claim. Back pay in the amount of $7,000 and punitive damages of $100,000 were awarded.

Here, all of EEOC's claims went to trial, and significant relief was obtained as to one of those claims. As the Seventh Circuit noted when affirming the finding that a plaintiff, who succeeded on 2 of his four claims and obtained a verdict of $225,000, was a "prevailing party," "By any definition, [plaintiff] won the battle." <u>Slane</u>, 164 F.3d at 1068.

EEOC was the prevailing party in this litigation. Given that finding, it would be error to leave in place the taxation of costs against EEOC. The prior order taxing those costs is vacated, and the Judgment must be accordingly amended.

### ***EEOC'S BILL OF COSTS***

Following the verdict in the second trial, EEOC filed its Bill of costs (#233). AutoZone has objected to the Bill of Costs, asserting that EEOC is not the prevailing party and hence is not entitled to taxation of its costs against AutoZone. Moreover, even if taxation of costs is proper, AutoZone objects to some of the costs that are included in the Bill of Costs.

Only a prevailing party is ordinarily entitled to its costs. Fed.R.Civ.P. 54(d)1). As was discussed at some length above, AutoZone's contention that EEOC was not the prevailing party in this action is without merit.

That leaves only the question of the amount of the costs that may properly be taxed against AutoZone. The only costs that may be taxed are:

1. Fees of the clerk and the marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under section 1923 of this title; and
6. Compensation of court appointed experts or interpreters.

28 U.S.C. 1920. See, Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-45 (1987);

Republic Tobacco Co. v. North Atlantic Trading Co., Inc., 481 F.3d 442, 447 (7th Cir. 2007).

As a general rule, court reporter and transcript fees are recoverable. A number of cases have held that costs for condensed transcripts and/or ASCII disks are not recoverable, primarily because enhanced transcripts and ASCII disks are prepared for counsel's convenience and are duplicative of the paper transcript. See, Harkins v. Riverboat Servs., 286 F.Supp. 2d 976, 970(N.D.Ill.2003); Canal Barge Co. v. Commonwealth Edison Co., - F. Supp. 2d -, Case No. ??, 2003 WL 1908023, April 18, 2003 (N.D.Ill.).

Included in the supporting documentation to the Bill of Costs are court reporter bills that include three charges of $25 for preparation of ASCII disks. In addition, the invoice for John Shepherd's deposition shows only a lump sum, which includes both the paper transcript and the ASCII disk (as well as shipping, which is discussed below). Assuming for the sake of efficiency that the latter charge would also be $25, the total amount for ASCII disks is $100. This is not a recoverable cost, so $100 is deducted from the Bill of Costs.

In addition, Steven Thompson's deposition was transcribed and videotaped, and EEOC obtained 3 copies of the video at a cost of $150 over the transcript cost. The video copies are duplicative of the paper transcript and are not taxable. That amount will be deducted from the Bill

of Costs.

AutoZone also argues that the costs associated with delivery or shipment of transcripts is an "ordinary business expense" and is not taxable. That is indeed what the <u>Harkins</u> court held. 286 F.Supp. 2d at 981. The Seventh Circuit has upheld, however, imposition of such costs as being within the court's discretion, even though they are not expressly mentioned in section 1920. The fact the EEOC counsel was located in Chicago and later in Washington DC made shipment of transcripts the only feasible manner for counsel to obtain those transcripts. In the exercise of my discretion, I decline to subtract the costs for shipping transcripts from the costs in this case.

Finally, AutoZone asserts that the costs of service of a private process server may not exceed the costs of the U.S. Marshal's fees. The fee charged by the U.S. Marshall for service of a subpoena is $55 per hour and $.51 per mile.

With respect to service of 2 subpoenas on Jacqueline Moore for her deposition, EEOC seeks $370. The first invoice, dated 12/18/08, shows the amount due as $180.00. This amount is not itemized; the invoice says "Subpoena Jacqueline Moore Call at address given in Memphis, TN FedEx". The second invoice is dated 1/13/09. It is not itemized either; it says "Subpoena Jacqueline Moore Call at address given in Memphis TN."

I see two problems with these invoices. The first one is the one raised by AutoZone: this far exceeds the $55 plus mileage charged by the U.S. Marshall. The second is that no explanation is given for the need to issue 2 subpoenas. Be that as it may, neither invoice reflects mileage, so the total taxable cost for service is $55. The $370 is reduced to $55, and $315 is deducted from the costs sought by EEOC.

The total amount of costs sought by EEOC is $9,610.18. The deductions discussed herein total $565, leaving $9,045.18 that is taxed against AutoZone.

## *INJUNCTIVE RELIEF*

On July 5, EEOC filed a motion for injunctive relief (#240). On that same date, EEOC file an Amended Motion for Injunctive Relief (#241). The first motion (#240) is therefore MOOT.

In the Amended Motion, EEOC seeks an injunction that would require AutoZone to comply with the reasonable accommodation provision of the ADA, to adopt policies and procedures to prevent future violations, to train its management level employees, to post a notice, to keep records, and to report to EEOC. Once a court has found that the employer "has intentionally engaged in ... an unlawful employment practice", the court "may enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. 2000e-5(g)(1).

The Seventh Circuit has emphasized that a successful *discrimination* plaintiff need not demonstrate a pattern or practice of discrimination in order to receive injunctive relief. Bruso v United Airlines, Inc., 239 F.3d 848, 864 (7th Cir.2001); EEOC v. Ilona of Hungary, Inc., 108 F.3d 1569, 1578 (7th Cir. 1997).

In Bruso, the plaintiff proved retaliatory demotion. He remained employed by the defendant, and the defendant had offered no evidence to indication that it was unlikely to discriminate or retaliate against him in the future. Those circumstances, in fact, indicated to the Court of Appeals, the possibility that defendant "could retaliate in the future."

AutoZone argues that Bruso and the other cases cited by EEOC are not dispositive because they were not verdicts on claims of failure to accommodate. AutoZone does not, however, actually explain that significance. In the initial inquiry - whether injunctive relief is appropriate - there appears little distinction between proving one type of violation versus proving another type. A jury

has already implicitly found that AutoZone's asserted policy and training deficient for the pertinent period of time.

In light of the statutory language and Seventh Circuit precedent indicating that injunctive relief is available to successful plaintiffs, I conclude that the distinction is one without a difference and that some form of injunctive relief is warranted. Concluding that injunctive relief is appropriate, however, is far from concluding that the injunction sought by EEOC reflects the proper scope of injunctive relief in this case. Each of the items sought by EEOC will therefore be considered separately.

The first provision that EEOC wants would require AutoZone to comply with the reasonable accommodation requirements of the ADA. AutoZone complains an injunction ordering compliance with the law is overbroad under general equitable principles, citing two 8th Circuit cases that relied on a 1905 Supreme Court case. More recently, however, Courts within the Seventh Circuit have recognized significant value in requiring future compliance with employment discrimination laws (which of course did not exist and were not considered in the 100 year old Supreme Court case). The value lies in the fact that such injunctions can be enforced by a motion invoking the contempt power of the issuing court, rather than requiring an already-successful plaintiff to file additional EEOC charges and subsequent new litigation. See O'Sullivan v. City of Chicago, 478 F.Supp.2d 1034, 1041 (N.D.Ill.2007), citing E.E.O.C. v. Harris Chernin, Inc., 10 F.3d 1286, 1292 (7th Cir.1993). Accord, E.E.O.C. v. Management Hospitality of Racine, Inc., - F. Supp. 2d -, 2010 WL 3431822 at *16, Case No. 06C0715, Aug. 31, 2010 (E.D. Wis.).

In AutoZone's response to this motion, it asserts that its policy vis-a-vis the ADA has been "updated", effective July 1, 2011. The updated policy, clearly stated in a revised employee manual, sets out employee rights under the ADA's accommodation provision and the procedures an

employee has available to present a request for accommodation. This, according to AutoZone, shows that an injunction to comply with the ADA is no longer needed, especially in light of the fact that the single violation proved occurred 8 years ago.

The fact that AutoZone has updated its policy is commendable, but the fact that it took 8 years to do so tends to show at least some level of reluctance on AutoZone's part. Even in the motions following the verdict in the second trial, AutoZone has glossed over the necessary implications of that verdict. For example, AutoZone describes the incident as "only an isolated incident related to one employee, one store, and one supervisor, despite the fact that the evidence included the knowledge of Shepherd's disability and request for accommodation by upper management (at least 3) and HR personnel.

Certainly if the corporate intent is to implement and enforce the new policy in the future, no new violations *should* occur. However, given AutoZone's rather grudging acknowledgment of its responsibility to Shepherd and its other employees, there is indeed the possibility of future infractions. Entry of an injunction requiring compliance with the ADA is appropriate under those circumstance.

AutoZone also disagrees with EEOC's request that the injunction apply to all stores within the Central District of Illinois, arguing that since the violation was found to have occurred at only one store, the injunction should be limited to that store. Once again, however, AutoZone ignores the fact that the violation occurred with the knowledge of management and HR persons well above the store level. This warrants extension of the injunction to all locations within this Court's jurisdiction.

I decline, however, to implement all of the "compliance" requirements sought by EEOC, finding them far too onerous under the circumstances here presented. I believe that one and only one additional element for compliance is needed, namely that AutoZone be ordered to submit to EEOC

a notice whenever in the next 3 years an employee makes a request, written or oral, for reasonable accommodation at any retail store within the Central District of Illinois. Such notice shall be submitted within 30 days following the request. AutoZone shall maintain complete records of its response to such requests and shall make them available to EEOC upon 48 hours notice to AutoZone's HR department.

To the extent stated herein, EEOC's motion for injunctive relief is granted. Pursuant to 42 U.S.C. 2000e-5, this Court imposes the following injunctive provisions against AutoZone:

(1) AutoZone shall make reasonable accommodations to the known physical limitations of any qualified employee with a disability who is working at an AutoZone retail store within the Central District of Illinois and who requests an accommodation or whose need for an accommodation is otherwise known to AutoZone.

(2) For three years from the date of this Order, AutoZone shall notify EEOC in writing within 30 days after any employee who is working at an AutoZone retail store within the Central District of Illinois requests an accommodation for his or her disability or within 30 days after AutoZone otherwise becomes aware of the need for such disability.

(3) AutoZone shall maintain complete records for 4 years from this date of how it responded to such requests, including a description of the request, the investigation that was conducted, the interactive process, and the result of the complaint. Those records shall be made available for inspection by EEOC upon 48 hours notice to AutoZone's HR department.

### *PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST* (#242)

I have carefully considered the parties' submissions regarding the request that the Court award prejudgment interest, and I conclude that any such award would result in the necessity to reduce the total judgment amount in order to stay within the statutory cap on compensatory damages. Interest is compensatory in nature, designed to compensate for the lost value of the judgment over time, so it would clearly be encompassed within that cap. Accordingly, this motion is denied.

### CONCLUSION

Defendants Motion for judgment as a matter of law, for a new trial or to amend judgment

(#238) is DENIED. Plaintiff's motion for permanent injunction (#240) is FOUND AS MOOT;

Plaintiff's amended motion for permanent injunction (#241) is GRANTED AS STATED HEREIN;

Plaintiff's motion to vacate (#234) is GRANTED; and Plaintiff's motion to amend judgment (#242)

is DENIED. Costs are taxed against AutoZone in the amount of $9,045.18. The Clerk is directed to

amend the judgment in this case to reflect this Order.

ENTERED ON November 8, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE